VORYS, SATER, SEYMOUR AND PEASE LLP
Jocelyn M. Hoffman (SBN 332297)
jmhoffman@vorys.com
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (949) 526-7903
Facsimile: (949) 526-7903

Attorneys for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

REBEKA RODRIGUEZ,

Plaintiff,

vs.

SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.KNOTTS.COM,

Defendant.

Case No.: 2:25-CV-06661-DMG-AGR

Assigned to Hon. Dolly M. Gee

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Date:** **October 10, 2025**
**Time:** **9:30 a.m.**
**Courtroom:** **8C**

Date Action Filed: July 22, 2025

Date Action Served: August 20, 2025

Response Date: September 10, 2025

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2025, or as soon thereafter as the matter may be heard in Courtroom 8C in the United States Courthouse for the Central District of California, 350 W. 1st Street, Los Angeles, California 90012, Defendant Six Flags Entertainment Corporation will, and hereby does, moves this Court to dismiss the Complaint and each of Plaintiff Rebeka Rodriguez's claims. This Motion is pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction for lack of an injury-in-fact, and the Complaint further fails to state a claim upon which relief can be granted for a violation of 18 U.S.C. § 2511, California Penal Code § 638.51, and Intrusion Upon Seclusion.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records in this action, and such oral argument as may be presented at the time of the hearing. A Proposed Order is filed simultaneously herewith for the Court's consideration.

Dated: September 10, 2025 VORYS, SATER, SEYMOUR AND PEASE LLP

By: */s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman
Attorneys for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.CEDARPOINT.COM

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... i

I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 2

III. LAW AND ARGUMENT ..... 2

A. This Court Lacks Subject Matter Jurisdiction as the Complaint Fails to Allege an Injury-In-Fact. ..... 3

i. Legal Standard. ..... 3

ii. Similar Complaints to Ms. Casillas's Have Been Dismissed for Comparable Deficiencies ..... 3

B. All Three Counts in the Complaint Fail as a Matter of Law and Should Be Dismissed ..... 5

i. Legal Standard ..... 5

ii. The Federal Wiretap Act, 18 U.S.C. § 2511, Requires Interception of the Contents of an Electronic Communication ..... 6

iii. Ms. Rodriguez Has Failed to Plead a Violation of California Penal Code § 638.51 ..... 8

1. The Threadbare Complaint Falls Short of Pleading a Cognizable Claim ..... 8

2. Trap and Trace Devices Only Apply to Telephones ..... 10

3. Section 638.51 Is a Criminal Statute with No Private Right of Action Here ..... 12

iv. The Complaint Fails to State a Cognizable Claim for Intrusion Upon Seclusion ..... 14

C. Even If Ms. Rodriguez Pled a Cognizable Claim, Venue Is Improper. ..... 16

IV. CONCLUSION ..... 17

CERTIFICATE OF COMPLIANCE ..... 1

CERTIFICATE OF SERVICE ..... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 8

*Cairo, Inc. v. Crossmedia Servs.*,
No. C 04-04825, 2005 U.S. Dist. LEXIS 8450 (N.D. Cal. Apr. 1, 2005)....16, 17

*Carpenter v. United States*,
585 U.S. 296 (2018)....................15

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....................3

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ....................5

*Gray v. Luxottica of America, Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633 (C.D. Cal. Dec. 16, 2024) ....................7

*Hughes v. Dave & Buster's Ent., Inc.*,
No. 25STCV10250 (Cal. Sup. Ct. July 15, 2025) ....................12

*Hughes v. Vivint, Inc.*,
No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) ....................3, 4

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ....................13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 U.S. LEXIS 120002 (N.D. Cal. June 24, 2025) ....................8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................6

*Licea v. Hickory Farms, LLC*,
No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Sup. Ct. Mar. 13, 2024) ........ 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 5

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355, 2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Mar. 30, 2023) ........ 9

*Meza v. Portfolio Recovery Assocs., LLC*,
860 F.3d 1218 (9th Cir. 2017) ........ 10

*Mitchener v. Talkspace Network, LLC*,
No. 2:24-CV-07067-JAK, 2025 U.S. Dist. LEXIS 127525 (C.D. Cal. June 27, 2025) ........ 4, 5

*Robinson v. Managed Accts. Receivables Corp.*,
654 F. Supp. 2d 1051 (C.D. Cal. 2009) ........ 15

*Rodriguez v. Autortrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 4, 5

*Rodriguez v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Sup. Ct. Sept. 9, 2024) ........ 9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 14

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Sup. Ct. Jan. 27, 2025) ........ 9, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 3

*Taus v. Loftus*,
151 P.3d 1185 (Cal. 2007) ........ 14

*Thai v. Richmond City Center, L.P.*,
86 Cal. App. 5th 282 (2022) ........ 13

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 15

*Vasquez v. SOLO 1 Kustoms, Inc.*,
27 Cal. App. 5th 84 (2018) ....................12

*In re Vizio Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................15

*Wallace v. Cellco P'ship*,
No. 14-cv-8052, 2015 U.S. Dist. LEXIS 201117 (C.D. Cal. Feb. 9, 2015).......12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................6, 7, 13, 14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6, 7

*In re Zynga*,
750 F.3d at 1108–09 ....................15

**Statutes**

18 U.S.C. § 2510(4) ....................6, 8

18 U.S.C. § 3121 ....................12

Cal. Pen. Code § 637.2(a) ....................13

Cal. Pen. Code § 638.50(c) ....................8, 10

Cal. Pen. Code § 638.51(a) ....................10

Cal. Pen. Code § 638.51(c) ....................12

Cal. Pen. Code § 638.52....................10

Cal. Pen. Code § 638.52(c) ....................11

Cal. Pen. Code § 638.52(d)....................10

Cal. Penal Code §§ 638.51–638.55....................14

California Penal Code § 638.51 ....................*passim*

CIPA....................12, 13, 14

Federal Wiretap Act ....................6

Federal Wiretap Act ....................7

Federal Wiretap Act, 18 U.S.C. § 2511 ........................................................*passim*

Federal Wiretap Act, the California Invasion of Privacy Act ..................................1

Wiretap Act .................................................................................................6, 14

**Court Rules**

Rule 12(b)(1)...................................................................................................3

Rule 12(b)(3).................................................................................................16

Rule 12(b)(6).................................................................................................16

**Other Authorities**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 183 (2012) ..............................................13

www.knotts.com ...............................................................................................1

www.knotts.com/legal .....................................................................................16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rebeka Rodriguez ("Rodriguez"), a self-proclaimed "tester" plaintiff in California, has filed a Complaint against Defendant Six Flags Entertainment Corporation ("Six Flags") in connection with Plaintiff's interactions with the website www.knotts.com (the "Knott's Website"), for the Knott's Berry Farm amusement park located in Buena Park, California. The Complaint alleges, in error, that the Knott's Website somehow utilizes a "trap and trace device" that runs afoul of the Federal Wiretap Act, the California Invasion of Privacy Act ("CIPA"), and California common law. These claims not only lack merit, but this Court lacks jurisdiction to resolve them.

Even after accepting the Complaint's threadbare allegations as true for the purposes of this Motion to Dismiss, the claims still fail for several reasons:

(1) The Complaint fails to allege a concrete and particularized injury-in-fact, and, therefore, there is no Article III standing.

(2) The Complaint does not allege any facts to suggest that the contents of a communication were intercepted; thus, it fails to state a claim under the Federal Wiretap Act, 18 U.S.C. § 2511.

(3) The Complaint fails to plausibly plead any violation of California Penal Code § 638.51 for several independent reasons:

   a. The threadbare allegations fall well short of stating a cognizable claim for relief.

   b. The alleged Claritas pixel is not a trap and trace device.

   c. There is no private right of action for this criminal statute.

(4) The Complaint's common law claim also fails to plead facts sufficient to show that Ms. Rodriguez had a reasonable expectation of privacy or the occurrence of any highly offensive conduct.

(5) Even if this Court finds that Ms. Rodriguez has pled a cognizable claim, she is bound by the terms of use which contain a binding forum

selection clause requiring this case to be transferred to the Northern District of Ohio.

For these reasons, as well as those set forth more fully below, this Court should dismiss Ms. Rodriguez's Complaint against Six Flags.

## II. FACTUAL ALLEGATIONS

Ms. Rodriguez is a self-proclaimed "consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." (Compl. ¶ 18.) Interested in the "goods, services, and information" on the Knott's Website, Ms. Rodriguez alleges that she visited the Knott's Website to "shop for amusement park tickets." (*Id.*) The Complaint avers that Six Flags allegedly "uses algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person." (*Id.* ¶ 11.) The Complaint generically states that the Claritas pixel uses "data from partnering publishers to develop a probability that different devices are shared by the same person" and "fingerprint[s]" users to collect user data. (*Id.* ¶¶ 11, 13.)

The Complaint speculates, without any direct factual allegations, that a Claritas pixel on the Knott's Website "requests and transmits other identifying personal information." (*Id.* ¶ 19.) But the Complaint fails to identify what personal information pertaining to Ms. Rodriguez, if any, was allegedly intercepted when she visited the Knott's Website. (*See generally id.*) Instead, the Complaint generically alleges the types of information the Claritas pixel might intercept before concluding without any specific factual allegations that the pixel is both a "trap and trace device" and "highly offensive." (*Id.* ¶¶ 20, 37.)

## III. LAW AND ARGUMENT

The Complaint fails to allege facts sufficient to show that Ms. Rodriguez suffered a concrete and particularized injury-in-fact. Therefore, this Court lacks Article III standing. To the extent this Court reaches the merits, the Complaint fails to state any claim upon which relief can be granted. As such, this Court should dismiss this case. In the

alternative, Six Flags moves the Court to transfer this case to the Northern District of Ohio under the terms and conditions of the Knott's Website, that the Complaint expressly incorporates by reference. (Compl. ¶ 1.)

**A. This Court Lacks Subject Matter Jurisdiction as the Complaint Fails to Allege an Injury-In-Fact.**

**i. Legal Standard.**

"Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction." *Hughes v. Vivint, Inc.*, No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423, *6 (C.D. Cal. July 12, 2024). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Id*.

**ii. Similar Complaints to Ms. Rodriguez's Have Been Dismissed for Comparable Deficiencies.**

The "'irreducible constitutional minimum' of standing consists of three elements: '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hughes v. Vivint, Inc.*, No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423, *6 (C.D. Cal. July 12, 2024) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.* at 339 (citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. And a "concrete injury must be de facto; that is, it must actually exist." *Id*. at 340 (citations omitted).

"Concrete injuries can be both tangible and intangible." *Id*. at *7. In order to

identify whether an intangible harm is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). While the role of the legislature "in identifying intangible harms may be instructive," ***a "violation of a statutory right does not automatically satisfy the injury-in-fact requirement***." *Id*. (emphasis added). Put simply, "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. (citing *TransUnion LLC* at 427) (emphasis in original). "A plaintiff adequately alleges harm to these privacy interests in the context of internet browsing by alleging tracking of 'browsing activities,' including 'an individual's likes, dislikes, interests, and habits over a significant amount of time.'" *Mitchener v. Talkspace Network, LLC*, No. 2:24-CV-07067-JAK, 2025 U.S. Dist. LEXIS 127525, at *20–21 (C.D. Cal. June 27, 2025) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020)) (dismissing complaint for lack of standing based on "conclusory allegations [that] does not identify what personal information" was captured).

*Rodriguez v. Autortrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025), which was filed by Ms. Rodriguez, by the same counsel, and similar allegations as here, provides a clear example of when a complaint lacks an injury in fact. *Rodriguez* involved an alleged tracking software on a website that allegedly "collect[ed] various types of information about the visitor to deliver targeted advertising." *Id.* at 925. The *Rodriguez* court found no standing when "Plaintiff fail[ed] to describe the contents of her query," as "[n]ot all information will qualify" to confer standing. *Id.* at 926. Besides alleging that she visited the website and "made a search query containing 'confidential' and 'private' information," Plaintiff "fail[ed] to demonstrate that she suffered an injury in fact." *Id.* at 925, 926.

Likewise, here, the Complaint lacks any allegations of an injury in fact beyond alleged procedural violations of the Federal Wiretap Act, 18 U.S.C. § 2511, and the

California Invasion of Privacy Act, California Penal Code § 638.51. Much like in *Rodriguez*, the Complaint lacks any allegations of "sufficiently personal or sensitive information." *Rodriguez* at 926. Instead, the Complaint alleges in a conclusory fashion that "Plaintiff visited the Website in the last year," and upon her visit, Claritas fired immediately and transmitted "identifying personal information." (Compl. ¶¶ 18–19.) Further, the Complaint merely alleges what type of information Claritas could collect, but not what type of information it actually collected upon Plaintiff's visit to the Website. (*Id.* at ¶ 14.) Courts in this district, as well as others, have consistently concluded that such allegations are not enough to confer standing. *See, e.g.*, *Rodriguez* at 926; *Mitchener* at *21–22.

**B. All Three Counts in the Complaint Fail as a Matter of Law and Should Be Dismissed.**

Setting the jurisdictional defect aside, the Complaint also fails to plead a cognizable claim upon which relief can be granted. The Complaint should be dismissed for this separate reason.

**i. Legal Standard.**

"A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citation omitted). While "detailed factual allegations" are not required, a complaint must have sufficient allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 668.

**ii. The Federal Wiretap Act, 18 U.S.C. § 2511, Requires Interception of the Contents of an Electronic Communication.**

Count I fails as a matter of law because the Complaint does not allege an interception of the contents of an electronic communication. Specifically, the Complaint lacks any allegations that Six Flags intercepted any "content" information. "The Wiretap Act makes it an offense to 'intentionally intercept . . . any wire, oral, or electronic communication.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (citing 18 U.S.C. § 2511(1)(a)). The Federal Wiretap Act (the "Act") defines "intercept" as applying only to the "contents" of a communication. 18 U.S.C. § 2510(4). In turn, "contents" refer to "any information concerning the substance, purport, or meaning of the communication." *Id.* § 2510(8). Put simply, there can be no interception under the Act if the allegedly intercepted information is not the "contents" of a communication.

Federal courts have excluded various types of information from the Act's definition of "contents." The Ninth Circuit distinguishes between "content" information and non-content "record" information. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (explaining how Congress removed "identity of the parties from such communication" in defining "contents" within the Act and finding that "record information regarding the characteristics of the message that is generated in the course of the communication" is not included in "contents" definition). Information such as HTTP requests, IP addresses, URLs, and other general data concerning a user's visit to a website fall under this latter category of "record" information. *See, e.g., id.* at 1107 (finding that "the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage" do not fall under the definition of "contents"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (finding information like the plaintiff's IP address, location at the time of visit, browser type, or operating system on her device are record information that do not "constitute[] message

content in the same way that the words of a text message or an email do[]"); *Gray v. Luxottica of America, Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633, at *17–18 (C.D. Cal. Dec. 16, 2024) (distinguishing between URLs and basic metadata that only reveal "basic identification information" from content information).

Here, the Complaint contains an alleged violation of the Act's Section 2511 for the alleged interception of Ms. Rodriguez's electronic communications through "tracking pixel technology, without [her] knowledge or consent." (Compl. ¶ 39.) However, even taking the Complaint's factual allegations as true, the Complaint fails to properly allege a claim under the Act because it only alleges general record information as opposed to "content" information. As such, the Complaint fails to allege that Six Flags intercepted the contents of Ms. Rodriguez's electronic communications which is required for a claim under the Act.

The Complaint contains general allegations that the Claritas pixel allegedly installed on the Knott's Website intercepted Ms. Rodriguez's "HTTP requests, URLs visited, and other metadata exchanged as part of [Rodriguez's] interactions with the site." (Compl. ¶ 38.) However, these are quintessential record information that "Congress excluded . . . from the definition of 'contents.'" *In re Zynga Privacy Litig* at 1107. Much like the plaintiffs in *In re Zynga* and *Yoon*, Ms. Rodriguez's record information about her interaction with the Knott's Website fails to meet the "contents" definition. And unlike the plaintiff in *Gray*, the Complaint fails to allege that the URLs of visited sites reveal anything more than basic information. (*Compare* Compl. ¶ 23 (alleging how the Claritas Tracking pixel record "URL referrer paths" to "identif[y] the source of the user's electronic communications") *with Gray* at *17–18 ("the Meta Pixel transmitted not just the URL and basic metadata, but also 'the fact that the patient was booking an eye exam'").) Without more, Ms. Rodriguez cannot raise a Federal Wiretap Act claim, because the Act's definition of "intercept" does not apply to the record information she alleges. For this reason, Count I should be dismissed.

**iii. Ms. Rodriguez Has Failed to Plead a Violation of California Penal**

**Code § 638.51.**

The Complaint does not state a cognizable claim for a violation of California Penal Code § 638.51. As a threshold matter, Count II must be plead in the alternative to Count I because Ms. Rodriguez's claim under Section 2511 of the Federal Wiretap Act is irreconcilable with her claim under California's trap and trace statute. As explained above, Section 2511 of the Federal Wiretap Act only applies to interceptions of the ***contents*** of communications. 18 U.S.C. § 2510(4). Meanwhile, California's restrictions on a "trap and trace device" applies only to ***identifying information*** about the communication and "not the contents of a communication." Cal. Pen. Code § 638.50(c). The court in *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. LEXIS 120002, at *11 (N.D. Cal. June 24, 2025), explained:

> If [Six Flags] only collects information regarding the 'metadata' of the communication, [Ms. Rodriguez's] right to privacy is not invaded because [she] has no expectation of privacy as to that type of data (e.g., [her] IP address or general geographic location). If [Six Flags] instead collects content information from communication between the parties (e.g., information provided from [Ms. Rodriguez] to [Six Flags] directly), the [Claritas] software is not a trap and trace device and § 638.50 does not apply.

Regardless of whether Count II should be plead in the alternative to Count I, Ms. Rodriguez's claim under Section 638.51 fails as a matter of law for several independent reasons: (1) the threadbare allegations in the Complaint do not state a claim for relief, (2) the Claritas pixel is not a pen register or a trap and trace device, and (3) Section 638.51 does not provide a private right of action here.

**1. The Threadbare Complaint Falls Short of Pleading a Cognizable Claim.**

Ms. Rodriguez has failed to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)). The cookie-cutter Complaint provides an exhaustive list of the *potential* harms

associated with data tracking technologies but fails to provide sufficient details as to how that harm occurred here. But "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. More specifically, "a complaint should clearly and fully set forth 'who is being sued, for what relief, and on what theory, with enough detail to guide discovery.'" *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355, 2023 U.S. Dist. LEXIS 55930, *14 (E.D. Cal. Mar. 30, 2023) (citations omitted). The Complaint falls well short of satisfying that standard here.

The Complaint does not contain a single fact related to what harm occurred to Ms. Rodriguez because of the alleged Claritas pixel. Instead, the Complaint highlights in the abstract what the Claritas pixel is capable of, not what it has allegedly done here. (Compl. ¶¶ 11–14.) For example, the Complaint alleges that the Claritas pixel "uses algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person," and that "[p]articipating websites and apps" then use that data. (*Id*. ¶ 11.) But the Complaint does not allege that occurred here. The Complaint provides a hypothetical scenario of the Claritas pixel being used but does not claim that that same hypothetical scenario actually occurred. (*Id*. ¶ 12.) The Complaint includes a paragraph explaining how the Claritas pixel allegedly worked here. (*Id*. ¶ 14.) However, the Complaint's explanation of what occurred here is devoid of any actual evidence of what information of Ms. Rodriguez's was intercepted, or how the Claritas pixel tracked her across her different devices, or whether that data was ever sold. (*Id*.) Thus, the Complaint provides nothing more than a hypothetical scenario involving an alleged Claritas pixel. The Complaint concedes that the Claritas pixel here only poses the "potential" for harm. (*Id*. ¶ 37.) The Complaint's hypothetical allegations related to that potential harm are insufficient to state a cognizable claim. *See Rodriguez v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370 (Cal. Sup. Ct. Sept. 9, 2024) (granting a demurrer of a Section 638.51 claim, holding "[t]he [Complaint] is noteworthy for pleading a series of hypothetical possibilities. There are few specific facts concerning either Plaintiff or Defendant."); *see also Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 Cal. Super.

LEXIS 710 (Cal. Sup. Ct. Jan. 27, 2025) (same, holding "the [Complaint] provides a lengthy exposition of theoretical possibilities of what website operators 'can' do to deploy tracking software and how a website owner 'can' correlate a grouping of fragments to create a unique digital profile of each website visitor").

The Complaint lacks sufficient facts to allege that Six Flags has used the Claritas pixel, let alone in any malicious way. Thus, the Complaint has failed to state a cognizable claim under Section 638.51.

### 2. Trap and Trace Devices Only Apply to Telephones.

"California Rules of statutory interpretation seek to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" *Meza v. Portfolio Recovery Assocs., LLC*, 860 F.3d 1218, 1222 (9th Cir. 2017) (citing *State Farm Mut. Auto Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 88 P.3d 71, 78 (Cal. 2004)). "California courts also 'read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" *Id*. As the statutory scheme demonstrates, the Claritas pixel is not a trap and trace device.

Section 638.51 provides "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Pen. Code § 638.51(a). A trap and trace device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.50(c). Although the definition of a trap and trace device does not include any reference to website technologies, such as those at issue here, the statutory scheme makes clear that a trap and trace device can only operate on a telephone.

For example, Section 638.52 sets forth the procedure for obtaining a written court order to install a trap and trace device. Cal. Pen. Code § 638.52. Such an order must specify, in part: "[t]he identify, if known, of the person to whom is leased or in whose name is listed *the telephone line* to which the pen register or trap and trace device is to be

attached" and "[t]he number and, if known, physical location of *the telephone line* to which the pen register or trap and trace device is to be attached[.]" Cal. Pen. Code § 638.52(d) (emphasis added). In addition, subsection (c) states that "[i]nformation acquired solely pursuant to the authority for . . . a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from *the telephone number*." Cal. Pen. Code § 638.52(c) (emphasis added). In sum, the information that is statutorily required to be included in an order for a trap and trace device *must* include a telephone number. Thus, a trap and trace device simply cannot be used outside the bounds of telephone technology.

Courts have rejected recent attempts to dramatically expand the otherwise narrow statutory definition of a trap and trace device. For example, in *Sanchez v. Cars.com*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Sup. Ct. Jan. 27, 2025), the court sustained a demurrer to a Section 638.51 claim filed by a plaintiff represented by the same counsel as Ms. Rodriguez, holding:

> Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. Thus, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refer to devices or processes that are used to record or decode

> dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.

*Id*. at *8.

In *Licea v. Hickory Farms, LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Sup. Ct. Mar. 13, 2024), the court dismissed a claim under Section 638.51 and held that "[l]egislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications." *Id*. at *7. Likewise, in *Hughes v. Dave & Buster's Ent., Inc.*, No. 25STCV10250 (Cal. Sup. Ct. July 15, 2025), the court dismissed a claim under Section 638.51 and refused to expand the definition of a trap and trace device to include internet communications. This Court should likewise refuse to expand the statute's scope.

**3. Section 638.51 Is a Criminal Statute with No Private Right of Action.**

Section 638.51, like its federal counterpart 18 U.S.C. § 3121, does not permit a private right of action. *See Wallace v. Cellco P'ship*, No. 14-cv-8052, 2015 U.S. Dist. LEXIS 201117, *18 (C.D. Cal. Feb. 9, 2015) ("[T]he Court finds no statutory basis for a private right of action under [18 U.S.C. § 3121]."). Instead, Section 638.51 only imposes criminal penalties: "[a] violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment[.]" Cal. Pen. Code § 638.51(c) . It is well-settled that "criminal statutes do not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability." *Wallace* at *17. Indeed, California courts require that "[t]he Legislature's intention to create a private cause of action must be expressly stated or strongly implied in the statutory language or legislative history." *Vasquez v. SOLO 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 91 (2018). But that is not the case here.

The Complaint states in conclusory fashion that "CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order." (Compl. ¶ 26.) The Complaint cites Section 637.2. Section 637.2 provides: "[a]ny person

who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of . . . (1) Five thousand dollars ($5,000) per violation[,] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." Cal. Pen. Code § 637.2(a). Ms. Rodriguez's self-serving and conclusory citation to Section 637.2 is misplaced.

*First*, the statutory language is ambiguous as to whether Section 637.2 applies to Section 638.51. As a preliminary matter, courts have not interpreted Section 637.2 as automatically providing a private right of action for *all* CIPA violations. *See Yoon*, 549 F. Supp. 3d at 1085 ("The parties do not cite, and the Court could not find, authority on whether § 637.2(a) provides a private right of action for claims arising under § 635."). Turning to the plain language, Section 638.51, a criminal statute, specifically sets forth a grant of relief (i.e., fines, imprisonment, or both), whereas Section 637.2, at best, provides a general private right of action. Where a specific provision and general provision conflict, it is well-settled that the specific provision prevails. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails[.]"); *see also Thai v. Richmond City Center, L.P.*, 86 Cal. App. 5th 282, 290 (2022) ("[W]hen the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply.") Consequently, the specifically enumerated remedies included under Section 638.51 are the only available remedies for an alleged violation.

*Second*, the legislative history implies that Section 637.2 was never intended to apply to Section 638.51. California passed Section 637.2 in 1967 and intended to create a "new, statutory private right of action, authorizing any person who has been injured by any violation of the invasion-of-privacy legislation to bring a civil action to recover damages and to obtain injunctive relief in response to such violation." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 115–16 (2006). In contrast, California passed Section 638.51 in 2015, "intend[ing] to authorize state and local law enforcement agencies to seek

emergency orders for pen register/trap and trace devices used in telephone surveillance." C.A. B. An., A.B. 929 Assem., Apr. 21, 2015 at 10–12. Indeed, looking to the chapter as a whole reveals this detailed statutory scheme: Section 638.51 provides criminal sanctions for violating the law, Section 638.52 and 638.53 detail how a peace officer is to obtain court authorization for the use of a pen register or trap and trace device, Section 638.54 requires notice by a government entity on the identified target of a pen register or trap and trace device, and Section 638.55 allows for suppression of evidence wrongfully obtained and permits the Attorney General to commence a civil action to compel governmental compliance. *See* Cal. Penal Code §§ 638.51–638.55.

*Third*, even if Section 637.2 applied to Section 638.51, it would not apply here because Ms. Rodriguez suffered no injury. *Yoon*, 549 F. Supp. 3d at 1085 ("Happily, however, the language of the CIPA is far more straightforward than the analogous language of the Wiretap Act: only a person 'who has been injured by a violation of this chapter' may assert a civil claim."). The Complaint provides a general description of the type of data that the Claritas pixel collects. (Compl. ¶¶ 23–24.) However, the Complaint does not contain a single fact related to what data of Ms. Rodriguez's was collected, if any. (*See generally id*.) Indeed, Ms. Rodriguez admits that she is nothing more than a "tester" plaintiff and concedes that the Claritas pixel merely poses the *potential* of harm. (*Id*. ¶¶ 18, 28, 37.) As such, Ms. Rodriguez has failed to plead injury and therefore lacks statutory standing to bring a claim under Section 637.2. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) ("agree[ing]" that "construal of § 637.2 as providing a private right of action for a violation of § 635 would be unconstitutional, as it would provide Plaintiff a cause of action without suffering injury-in-fact.").

For these reasons, Count II should be dismissed.

**iv. The Complaint Fails to State a Cognizable Claim for Intrusion Upon Seclusion.**

Count III fails as a matter of law because the Complaint does not properly plead a cognizable claim for intrusion upon seclusion. Under California law, a claim for invasion

of privacy based on an intrusion upon seclusion requires (1) intrusion into a private place, conversation, or matter, that is (2) a manner highly offensive to a reasonable person. *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007). The threadbare allegations contained in the Complaint fail to plead both elements.

*First*, Ms. Rodriguez cannot raise a reasonable expectation of privacy over information voluntarily given to third parties. To find an intrusion, Ms. Rodriguez must have "a reasonable expectation of privacy" in the data information allegedly intruded upon by Six Flags. *See Robinson v. Managed Accts. Receivables Corp.*, 654 F. Supp. 2d 1051, 1063 (C.D. Cal. 2009) (*citing Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998)). A person generally "has no legitimate expectation of privacy in information [s]he voluntarily turns over to third parties." *Carpenter v. United States*, 585 U.S. 296, 307 (2018). "Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit . . . ." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *see also In re Zynga*, 750 F.3d at 1108–09 (noting how "a person does not have a reasonable expectation of privacy" for record information such as the URL of a website the plaintiff had previously visited).

Here, Ms. Rodriguez voluntarily provided record information such as her IP address, URLs with basic information, and basic metadata based on her interaction with the Knott's Website. (Compl. ¶ 24.) Such record information is not the type of sensitive data that warrant privacy protection. *See In re Vizio Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications."). As such, the Complaint fails to properly plead the first element of Ms. Rodriguez's intrusion upon seclusion claim.

*Second*, even if Ms. Rodriguez has a privacy interest in her record information voluntarily disclosed upon allegedly visiting the Knott's Website (she does not), disclosure of record information would not be highly offensive to a reasonable person. A collection of "basic contact information" is an "insufficient fit" with "common law privacy

torts." *In re Zynga*, 750 F.3d at 1049–50. Here, Ms. Rodriguez does not allege that Six Flags intruded upon – let alone disclosed – Ms. Rodriguez's personal and sensitive information. (*See generally* Compl.) For this reason, Ms. Rodriguez likewise fails to properly plead the second element of her privacy claim.

Because Ms. Rodriguez fails to allege both elements of an intrusion upon seclusion claim, Count III should be dismissed.

**C. Even If Ms. Rodriguez Pled a Cognizable Claim, the Case Should be Transferred Under the Terms of Use Plaintiff Relies Upon in the Complaint.**

Should this Court find that Ms. Rodriguez has pled a cognizable claim, this Court should also find that by including the terms of use in her Complaint, Ms. Rodriguez has admitted that those terms of use are binding here. As such, Ms. Rodriguez is bound by the forum selection clause contained in those terms of use and this case should be transferred to the Northern District of Ohio. Enforcement of a forum-selection clause is proper through a motion to transfer venue under 28 U.S.C. § 1404(a). *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.D. of Texas*, 571 U.S. 49, 59 (2013). By including the terms of use in the Complaint, Ms. Rodriguez admits that the Knott's Website's terms of use are applicable here.

Ms. Rodriguez claims that this "case involves an outrageous privacy 'bait and switch' scheme." (Compl. ¶ 1.) According to Ms. Rodriguez, the Knott's Website "lures" visitors to the website via its privacy policy. (*Id.*) In support of this argument, the Complaint cites to the Knott's Website's privacy policy. (*Id.*) That policy states, "[t]his Privacy Policy is incorporated into, and is part of, our Terms of Use available at www.knotts.com/legal which govern your access to the Site and your use of the Site and/or services." Those terms of use contain the following binding forum selection clause:

> These Terms of Use are governed by the laws of the State of Ohio, U.S.A. without regard to conflicts of laws principles. Any action you bring relating in any way to these Terms of Use or any matters related to the

> Sites shall be brought in either the State or Federal Courts located in Erie County, Ohio and you expressly consent to the jurisdiction of said courts. If any provision of this Agreement is void or unenforceable in whole or in part, the remaining provisions of this Agreement shall not be affected thereby. Any cause of action you may have with respect to your use of these Sites must be commenced within one (1) year after the claim or cause of action arises, otherwise the cause shall be forever barred. Access or use of the Sites is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, including without limitation this paragraph.

Knott's Berry Farm, Privacy Policy Legal Terms of Use, https://www.knotts.com/legal (last visited Sept. 10, 2025).

It is well-settled that "forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Cairo, Inc. v. Crossmedia Servs.*, No. C 04-04825, 2005 U.S. Dist. LEXIS 8450, *10 (N.D. Cal. Apr. 1, 2005) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The forum selection clause here is clear: any action brought related to the Knott's Website must be brought in state or federal court in Erie County, Ohio. By including the privacy policy and the accompanying terms of use in the Complaint, Ms. Rodriguez admits that she was both aware of the privacy policy and the terms of use and therefore bound by the same. (Compl. ¶ 1.) Put simply, Ms. Rodriguez cannot pick and choose which terms should be enforced, she is bound the terms that form the basis of Complaint. (*See id.*)

For these reasons, this Court should find that Ms. Rodriguez is bound by the the forum selection clause and transfer this matter to the Northern District of Ohio.

## IV. CONCLUSION

For the foregoing reasons, Six Flags respectfully requests the Court grant its Motion to Dismiss.

Dated September 10, 2025

VORYS, SATER, SEYMOUR AND PEASE LLP

By: */s/ Jocelyn M. Hoffman*

Jocelyn M. Hoffman
Attorneys for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION

**CERTIFICATE OF COMPLIANCE**

On September 10, 2025, the undersigned, counsel of record for Six Flags Entertainment Corporation, certifies that this brief contains 5,984 of words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

*/s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman