VORYS, SATER, SEYMOUR AND PEASE LLP
Jocelyn M. Hoffman (SBN 332297)
jmhoffman@vorys.com
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (949) 526-7903
Facsimile: (949) 526-7903

Attorneys for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| REBEKA RODRIGUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.KNOTTS.COM,<br><br>Defendant. | Case No.: 2:25-CV-06661-DMG-AGR<br><br>Assigned to Hon. Dolly M. Gee<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date: October 31, 2025**<br>**Time: 9:30 a.m.**<br>**Courtroom: 8C**<br><br>Date Action Filed: July 22, 2025<br><br>Date Action Served: August 20, 2025 |

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 31, 2025, or as soon thereafter as the matter may be heard in Courtroom 8C in the United States Courthouse for the Central District of California, 350 W. 1st Street, Los Angeles, California 90012, Defendant Six Flags Entertainment Corporation will, and hereby does, move this Court to dismiss the First Amended Complaint and each of Plaintiff Rebeka Rodriguez's claims. This Motion is pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction for lack of an injury-in-fact, and the First Amended Complaint further fails to state a claim upon which relief can be granted for all of plaintiff's claims.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records in this action, and such oral argument as may be presented at the time of the hearing. A Proposed Order is filed simultaneously herewith for the Court's consideration.

Dated: October 3, 2025 VORYS, SATER, SEYMOUR AND PEASE LLP

By: */s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman
Attorneys for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.KNOTTS.COM

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ v

I. INTRODUCTION ........ 1

II. FACTUAL ALLEGATIONS ........ 2

III. LAW AND ARGUMENT ........ 3

A. This Court Lacks Subject Matter Jurisdiction Because the Amended Complaint Fails to Allege an Injury-In-Fact ........ 3

i. Legal Standard. ........ 3

ii. The Amended Complaint Lacks Allegations of Any Injury-in-Fact ........ 4

iii. Similar Complaints to Ms. Rodriguez's Have Been Dismissed for Comparable Deficiencies ........ 6

B. The Amended Complaint Fails to Plead Cognizable Claims and Should Be Dismissed ........ 7

i. Legal Standard ........ 7

ii The Federal Wiretap Act, 18 U.S.C. § 2511, Requires Interception of the Contents of an Electronic Communication ........ 8

iii. The Amended Complaint Fails to Properly Plead Ms. Rodriguez's Privacy Claims ........ 9

iv. The Amended Complaint Fails to Plead a Violation of California Penal Code § 631(a) ........ 11

v. The Amended Complaint Fails to Plead a Violation of California Penal Code § 638.51 ........ 13

vi. This "Tester" Plaintiff Also Lacks Statutory Standing Under California Penal Code § 637.2 ........ 16

vii. The Amended Complaint Fails to Properly Plead a Common Law Fraud Claim with Particularity ........ 17

viii. The Amended Complaint Fails to State a Cognizable Unjust

Enrichment Claim .......... 18

C. Even If Ms. Rodriguez Pled a Cognizable Claim, the Case Should be Transferred Under the Terms of Use Plaintiff Relies Upon in the Amended Complaint .......... 19

IV. CONCLUSION .......... 21

# TABLE OF AUTHORITIES


**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 18

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 18

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.D. of Texas*,
571 U.S. 49 (2013) .......... 19

*B. Braun Med., Inc. v. Rogers*,
163 Fed. Appx. 500 (9th Cir. 2006) .......... 18

*Bell Atlantic Co. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Bryars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) .......... 5

*Cairo, Inc. v. Crossmedia Servs.*,
No. C 04-04825, 2005 U.S. Dist. LEXIS 8450 (N.D. Cal. Apr. 1, 2005) .......... 20

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .......... 3

*City of Oakland v. The Oakland Raiders*,
83 Cal. App. 5th 458 (2022) .......... 18

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) .......... 7

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 10

*Gray v. Luxottica of America, Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633 (C.D.

Cal. Dec. 16, 2024)........................................................................................8, 9

*Hart v. TWC Prod. & Tech. LLC*,
No. 20-cv-03842-JST, 2023 U.S. Dist. LEXIS 90180 (N.D. Cal. Mar. 30, 2023)........................................................................................18

*Heiting v. Taro Pharms. U.S., Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)........................................................11, 12

*Hughes v. Dave & Buster's Ent., Inc.*,
No. 25STCV10250 (Cal. Sup. Ct. July 15, 2025)..............................................16

*Hughes v. Vivint, Inc.*,
No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024)........................................................................................3, 4, 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................................................................5, 9, 10

*In re iPhone Application, Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................11

*In re The Application of the United States of America for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ...............................................15

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014)..........................................9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)..............................................................8, 9, 10, 11

*JST Distrib., LLC v. CNV.com, Inc.*,
No. CV 17-6264 PSG (MRWx), 2018 U.S. Dist. LEXIS 222222 (C.D. Cal. Mar. 7, 2018)........................................................................................18

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 U.S. LEXIS 120002 (N.D. Cal. June 24, 2025)........................................................................................13

*Konop v. Hawaiian Airlines, Inc.*,

302 F. 3d 868 (9th Cir. 2002) .......... 8

*Lazar v. Superior Court*,
909 P.2d 981 (Cal. 1996) .......... 17

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 4

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 12

*Licea v. Hickory Farms*,
*LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Sup. Ct. Mar. 13, 2024) .......... 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......... 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025, (9th Cir. 2008) .......... 7

*Meza v. Portfolio Recovery Assocs., LLC*,
860 F.3d 1218 (9th Cir. 2017) .......... 14

*Mikulsky v. Bloomingdale's, Inc.*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 10

*Mikulsky v. Bloomingdale's, Inc.*,
No. 3:23-CV-00285-H-MSB, 2024 U.S. Dist. LEXIS 11869 (S.D. Cal. Jan. 22, 2024) .......... 7

*Mitchener v. Talkspace Network, LLC*,
No. 2:24-CV-07067-JAK, 2025 U.S. Dist. LEXIS 127525 (C.D. Cal. June 27, 2025) .......... 5

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 6, 7

*Rodriguez v. Autotrader.com, Inc.*,
2:24-cv-09835-RGK-JC, 2025 U.S. Dist. LEXIS 70074 (C.D. Cal. Apr. 4, 2025) .......... 7, 10

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) .......... 19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 4

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 10, 17

*Sanchez v. Cars.com*,
No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Sup. Ct. Jan. 27, 2025) .......... 15, 16

*Smith v. Maryland*,
442 U.S. 735, 736 (1979) .......... 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*State Farm Mut. Auto Ins. Co. v. Garamendi*,
32 Cal. 4th 1029, 88 P.3d 71 (Cal. 2004) .......... 14

*Swearingen v. Healthy Bev., LLC*,
No. 13-cv-04385-EMC, 2017 U.S. LEXIS 66938 (N.D. Cal. May 2, 2017) .......... 19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 8, 9, 10, 17

**STATUTES**

18 U.S.C. § 2510(4) .......... 8

18 U.S.C. § 2510(8) .......... 8

18 U.S.C. § 2511 .......... 1, 8, 13

18 U.S.C. § 2511(1)(a) .......... 8

18 U.S.C. § 3127(4) .......... 15
28 U.S.C. § 1404(a) .......... 20
Cal. Civ. Proc. Code § 340 .......... 11
Cal. Pen. Code § 631(a) .......... passim
Cal. Pen. Code § 635 .......... 17
Cal. Pen. Code § 637.2 .......... 16, 17
Cal. Pen. Code § 637.2(a) .......... 17
Cal. Pen. Code § 638.50 .......... 14
Cal. Pen. Code § 638.50(c) .......... 13, 14
Cal. Pen. Code § 638.51 .......... passim
Cal. Pen. Code § 638.51(a) .......... 14
Cal. Pen. Code § 638.52 .......... 14, 16
Cal. Pen. Code § 638.52(c) .......... 15
Cal. Pen. Code § 638.52(d) .......... 15
Cal. Pen. Code § 638.53 .......... 14

**<u>OTHER AUTHORITIES</u>**

A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015) .......... 15, 16
Knott's Berry Farm, Privacy Policy Legal Terms of Use, https://www.knotts.com/legal (last accessed Oct. 2, 2025) .......... 20
Knott's Berry Farm, Privacy Policy, https://www.knotts.com/legal/privacy-policy (last accessed Oct. 2, 2025) .......... 11

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) .......... 3, 4
Fed. R. Civ. P. 12(b)(6) .......... 7
Fed. R. Civ. P. 9(b) .......... 17, 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rebeka Rodriguez ("Rodriguez"), a self-proclaimed "tester" plaintiff in California, filed a conclusory 13-page complaint against Defendant Six Flags Entertainment Corporation ("Six Flags") related to alleged tracking technology on its website www.knotts.com (the "Knott's Website"), for the Knott's Berry Farm amusement park located in Buena Park, California. (Compl., ECF No. 1.) Six Flags moved to dismiss. (Def.'s Motion to Dismiss, ECF No. 12.)

In response, Ms. Rodriguez filed an amended complaint, adding allegations occurring two months after filing her initial complaint and asserting four new claims (the "Amended Complaint"). (Pl.'s First Am. Compl., ECF 14 (hereinafter, "Am. Compl.").) The Amended Complaint, however, suffers from the same deficiencies as the original complaint – highlighting the futility of this "tester" plaintiff's purported claims that *still* lack merit for several reasons:

(1) The Amended Complaint fails to allege a concrete and particularized injury-in-fact to establish Article III standing; thus, this Court lacks jurisdiction to hear this "tester" plaintiff's claims.

(2) The Amended Complaint lacks facts to suggest that the contents of a communication were intercepted; thus, failing to state a claim under the Federal Wiretap Act, 18 U.S.C. § 2511.

(3) The Amended Complaint fails to allege any protected privacy interest; thus, there can be no claims for invasion of privacy nor intrusion upon seclusion.

(4) The Amended Complaint fails to plausibly plead a violation of California Penal Code § 631(a) under any of its three clauses or under a theory of aiding some other third-party.

(5) The Amended Complaint fails to plausibly plead a violation of California Penal Code § 638.51 because the tracking technologies

referenced in the Amended Complaint are not trap and trace devices.

(6) Both California Invasion of Privacy Act ("CIPA") claims fail for lack of statutory standing to bring a private right of action.

(7) The Amended Complaint fails to plead the elements of its fraud claim with particularity.

(8) The Amended Complaint fails to plead a claim for unjust enrichment because it lacks factual allegations demonstrating that Six Flags received any economic benefit from the "tester's" online browsing activities.

(9) Even if this Court finds that Ms. Rodriguez has pled a cognizable claim, she is bound by the website's terms of use, which contains a binding forum selection clause requiring this case to be transferred to the Northern District of Ohio.

For these reasons, as well as those set forth more fully below, this Court should dismiss the Amended Complaint against Six Flags.

## II. FACTUAL ALLEGATIONS

Ms. Rodriguez is a self-proclaimed "tester" of compliance with California privacy laws. (Am. Compl. ¶ 86.) Six Flags is a Delaware corporation, with its principal place of business in North Carolina. (*Id.* ¶ 7.) Six Flags owns and operates Knott's Berry Farm, an amusement park in Buena Park, California, including the Knott's Website. (*Id.* ¶¶ 12–13.)

Ms. Rodriguez claims she first visited the Knott's Website in May 2024 because she was "genuinely interested in the goods, services, and information available[,]" with no allegations about what those goods or services are. (*Id.* ¶ 86.) Ms. Rodriguez claims that when she first visited the Knott's Website, she purportedly encountered "third party cookies" that "began to collect information about [her] device and [her] interactions with the [Knott's] Website." (*Id.* ¶ 87.) Ms. Rodriguez allegedly visited the Knott's Website *again* in September 2025 – two months after filing her complaint and in the same month

Six Flags filed its initial motion to dismiss. (*Id*. ¶ 92.) Despite the ongoing litigation, Ms. Rodriguez alleges she visited the Knott's Website in September 2025, to "browse information about" Knott's Berry Farm's "amusement park services and products." (*Id*.) According to Ms. Rodriguez, "cookies and tracking technologies, including those used for performance targeting, and social media functions" were used on the Knott's Website. (*Id*. ¶ 96.) Ms. Rodriguez claims to have relied on the cookie consent banner during her online browsing, and that despite rejecting non-essential cookies, the Knott's Website continued to use "cookies and tracking technologies." (*Id*. ¶¶ 93–98.) However, the Amended Complaint fails to identify how any of Ms. Rodriguez's information was intercepted. (*See generally id*.) The Amended Complaint admits that it is unclear "what data, *if any*, is being sent to whom." (*Id*. ¶ 99 (emphasis added).)

## III. LAW AND ARGUMENT

The Amended Complaint fails to allege facts sufficient to show that Ms. Rodriguez suffered a concrete and particularized injury-in-fact. Because the Amended Complaint failed to establish Article III standing, this Court lacks jurisdiction to hear Ms. Rodriguez's claims. Moreover, the Amended Complaint fails to state a claim upon which relief can be granted. Thus, this case should be dismissed. In the alternative, Six Flags moves the Court to transfer this case to the Northern District of Ohio under the terms and conditions of the Knott's Website that the Amended Complaint expressly incorporates by reference. (Am. Compl. ¶¶ 15, 29.)

### A. This Court Lacks Subject Matter Jurisdiction Because the Amended Complaint Fails to Allege an Injury-In-Fact.

#### i. Legal Standard.

"Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction." *Hughes v. Vivint, Inc.*, No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423, *5 (C.D. Cal. July 12, 2024). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing . . . ." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir.

2010). A defendant may lodge either a facial or factual challenge under Rule 12(b)(1). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of plaintiff's allegations but asserts that they are 'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone* at 1039.)

**ii. The Amended Complaint Lacks Allegations of Any Injury-in-Fact.**

The Amended Complaint contains abstract and speculative allegations of harm without identifying an injury-in-fact; thus, the Amended Complaint should be dismissed because Ms. Rodriguez lacks standing to provide this Court jurisdiction over her claims. The "'irreducible constitutional minimum' of standing consists of three elements: '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hughes*, 2024 U.S. Dist. LEXIS 232423, at *6 (alteration in original) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "To establish injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc.* at 339 (internal quotation marks and citations omitted). And a "concrete injury must be *de facto*; that is, it must actually exist[,]" rather than "abstract" or "theoretical." *Id*. at 340 (internal quotation marks and citations omitted).

Standing "requires more than an injury to a cognizable interest" for "the party seeking review [must] be himself among the injured." *Lujan* at 563. ***A "violation of a statutory right does not automatically satisfy the injury-in-fact requirement***." *Hughes*, 2024 U.S. Dist. LEXIS 232423, at *7 (emphasis added). Put simply, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo* at 341. In the context of privacy interests for internet browsing cases, a plaintiff adequately alleges

an injury-in-fact for tracking of "browsing activities" that include "cradle-to-grave profiles" of "an individual's likes, dislikes, interests, and habits *over a significant amount of time* . . . ." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) (emphasis added).

Without more, courts routinely dismiss cases lacking specific allegations concerning sensitive, personal information. *E.g.*, *Mitchener v. Talkspace Network, LLC*, No. 2:24-CV-07067-JAK, 2025 U.S. Dist. LEXIS 127525, at *20–21 (C.D. Cal. June 27, 2025) (dismissing complaint for lack of standing based on "conclusory allegations [that] does not identify what personal information of Plaintiff's, if any, was captured"); *Bryars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *8 (C.D. Cal. Apr. 5, 2023) (finding lack of standing when "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest").

Here, the Amended Complaint lacks allegations to support an injury-in-fact that establishes Article III standing because it fails to convert its hypothetical allegations of what data *could* be collected into concrete harm to Ms. Rodriguez. The Amended Complaint expends pages on speculative injury, including information "data brokers" could collect through tracking technologies and what information the Knott's Website "may" collect based on its privacy policy. (*E.g.*, Am. Compl. ¶¶ 25–29.) But conspicuously absent from the allegations of "[Ms. Rodriguez's] Experiences," are any allegations describing the information – or even types of information – that she provided on the Knott's Website. (*Id.* ¶¶ 86–99.) The Amended Complaint itself wonders "what data, *if any*, is being sent to whom." (*Id.* ¶ 9 (emphasis added).) At most, the Amended Complaint generally alleges data collection concerning "[Ms. Rodriguez]'s device and [Ms. Rodriguez]'s interactions with the [Knott's] Website." (*Id.* ¶¶ 87, 91.) However, such utterly vague and conclusory allegations are not enough to establish an injury-in-fact. Much like in *Mitchener* and *Bryars*, the Amended Complaint lacks factual allegations about what sensitive, personal information of Ms. Rodriguez's was purportedly collected

that would give rise to Article III standing over her online browsing activity.

**iii. Similar Complaints to Ms. Rodriguez's Have Been Dismissed for Comparable Deficiencies.**

Similar privacy claims filed by Ms. Rodriguez, by the same counsel, and with similar allegations as here, have likewise failed the standing requirement. *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025), is instructive as to this "tester" plaintiff's lack of injury-in-fact. *Rodriguez* involved an alleged tracking software on a website that allegedly "collect[ed] various types of information about the visitor to deliver targeted advertising." *Id.* at 925. Judge Klausner found no standing when "Plaintiff fail[ed] to describe the contents of her query," as "[n]ot all information will qualify" to confer standing. *Id.* at 926–27. Besides alleging she visited the website and "made a search query containing 'confidential' and 'private' information," Plaintiff "fail[ed] to demonstrate that she suffered an injury in fact." *Id.* at 925–27.

Likewise, the Amended Complaint here lacks allegations of injury-in-fact beyond alleged statutory violations. Much like in *Rodriguez*, the Amended Complaint lacks any allegations of "sufficiently personal or sensitive" information. *Rodriguez* at 927. Instead, the Amended Complaint refers to conclusory, generic language such as "wiretapped information," "Private Communications," "website interactions," and "user input data." (Am. Compl. ¶¶ 145, 149.) Further, the Amended Complaint merely speculates what types of information the alleged tracking technologies *could* collect – not what actual information collected during Ms. Rodriguez's two interactions with the Knott's Website. (*Compare* Am. Compl. ¶¶ 39–66 *with id.* ¶¶ 86–99.) Without more, the Amended Complaint's conclusory and speculative allegations cannot confer Article III standing. *Hughes*, 2024 U.S. Dist. LEXIS 232423, at *7.

In addition, Ms. Rodriguez cannot claim an expectation of privacy as a "tester" plaintiff. (*Id.* ¶ 86.) As Judge Klausner aptly observed, "as a tester that visited and entered information into Defendant's website expecting information to be accessed, recorded, and disclosed, [Ms. Rodriguez] cannot claim an injury when her expectations were ultimately

met." *Rodriguez v. Autotrader.com, Inc.*, 2:24-cv-09835-RGK-JC, 2025 U.S. Dist. LEXIS 70074, at *3 (C.D. Cal. Apr. 4, 2025). The Amended Complaint's allegations about Ms. Rodriguez's browsing on the Knott's Website in September 2025, *two months* after filing her complaint, further implicates her "tester" status and highlights a misguided attempt to manufacture standing where none exists. (Am. Compl. ¶ 92.) "[B]are assertion of a statutorily granted privacy right" does not confer standing. *Mikulsky v. Bloomingdale's, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 U.S. Dist. LEXIS 11869, at *14 (S.D. Cal. Jan. 22, 2024).

Because the Amended Complaint lacks allegations of injury-in-fact, this Court should dismiss the Amended Complaint for lack of Article III standing.

**B. The Amended Complaint Fails to Plead Cognizable Claims and Should Be Dismissed.**

Beyond the jurisdictional defect, the Amended Complaint also fails to plead a cognizable claim upon which relief can be granted. The Amended Complaint should be dismissed for this separate reason.

**i. Legal Standard.**

"A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citation omitted). While "detailed factual allegations" are not required, a complaint must have sufficient allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 668.

**ii. The Federal Wiretap Act, 18 U.S.C. § 2511, Requires Interception of the Contents of an Electronic Communication.**

Count I fails because the Amended Complaint lacks allegations that the Knott's Website intercepted any "content" information. "The Wiretap Act makes it an offense to 'intentionally intercept . . . any wire, oral, or electronic communication.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (citing 18 U.S.C. § 2511(1)(a)). The Federal Wiretap Act (the "Act") defines "intercept" as applying only to the "contents" of a communication. 18 U.S.C. § 2510(4). In turn, "contents" refer to "the substance, purport, or meaning of the communication." *Id.* § 2510(8). Put simply, there can be no interception under the Act when the intercepted information does not include the "contents" of the communication.

The Ninth Circuit distinguishes between "content" information and non-content "record" information, which is not actionable under the law. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (finding that "record information regarding the characteristics of the message that is generated in the course of the communication" is not included in "contents" definition). Information such as HTTP requests, IP addresses, URLs, and other general data concerning a user's visit to a website constitute "record" information. *See, e.g.*, *id.* at 1107 (finding "the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage" do not fall under the definition of "contents"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (finding information like the plaintiff's IP address, location at the time of visit, browser type, or operating system on her device are record information that do not "constitute[] message content in the same way that the words of a text message or an email do[]"); *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633, at *17–18 (C.D. Cal. Dec. 16, 2024) (distinguishing URLs and basic metadata revealing only "basic identification information" from content information).

Here, the Amended Complaint alleges violation of the Act's Section 2511 for the purported interception of Ms. Rodriguez's electronic communications through use of "cookies or tracking pixel technology, without [her] knowledge or consent." (Am. Compl. ¶ 104.) However, the Amended Complaint fails to properly allege a claim under the Act because the allegations address only general record information – not "content" information. (*Id.* ¶ 103.) The Amended Complaint generally alleges that the cookies or tracking pixels on the Knott's Website intercepted Ms. Rodriguez's "HTTP requests, URLs visited, and other metadata exchanged as part of [Ms. Casilla's] interactions with the [Knott's] Website." (*Id.*) However, that information is quintessential record information "Congress excluded . . . from the definition of 'contents.'" *In re Zynga* at 1107. Much like the plaintiffs in *In re Zynga* and *Yoon*, Ms. Rodriguez's record information about her interaction with the Knott's Website are not actionable. And unlike the plaintiff in *Gray*, the Amended Complaint lacks allegations that the collected information revealed anything more than Ms. Rodriguez's basic record information. *See Gray* at *17–18 ("the Meta Pixel transmitted not just the URL and basic metadata, but also 'the fact that the patient was booking an eye exam'"). Without more, Ms. Rodriguez cannot raise a Federal Wiretap Act claim, because the Act's definition of "intercept" does not apply to the record information she alleges. Count I should therefore be dismissed.

**iii. The Amended Complaint Fails to Properly Plead Ms. Rodriguez's Privacy Claims.**

Counts II and III fail because the Amended Complaint does not properly plead claims for invasion of privacy or intrusion upon seclusion. California "sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (citation omitted). Courts analyze invasion of privacy and intrusion upon seclusion claims together "[b]ecause of the similarity of the tests" and ask (1) whether a reasonable expectation of privacy exists and (2) whether defendants' alleged conduct was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2023). The Amended Complaint pleads neither.

*First*, as noted above, Ms. Rodriguez cannot assert an expectation of privacy as a "tester" plaintiff who voluntarily visited the Knott's Website fully expecting the alleged collection of her information. *Supra* Sec. IV.A(iii); *Rodriguez*, 2025 U.S. Dist. LEXIS 70074, at *3 (C.D. Cal. Apr. 4, 2025).

*Second*, the Amended Complaint lacks allegations of Ms. Rodriguez's highly sensitive data being collected that would give rise to a reasonable expectation of privacy. Courts routinely hesitate to find a cognizable privacy interest in browsing data from users' casual engagement with a website. *See, e.g.*, *In re Zynga*, 750 F.3d at 1108–09 (concluding no reasonable expectation of privacy in the URL of a website plaintiff previously visited or in basic identification information); *Yoon*, 549 F. Supp. 3d at 1086 (holding no privacy interest in browsing data collected while on the defendant's website); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (finding no privacy interest in information such as user's mouse clicks or key strokes); *Mikulsky v. Bloomingdale's, Inc.*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (finding no "privacy interest in Plaintiff's interactions with Defendants' own website when they choose to use that website").

So too here, the Amended Complaint only alleges routine record information is at issue. (Am. Compl. ¶¶ 114, 128.) At most, the Amended Complaint generically pleads that "browsing history" and "website interactions" on the Knott's Website were compromised. (*Id.*) Yet, this record information is not the type of sensitive data that warrants privacy protection. *E.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598–99 (data tracking and collection "after [users] had logged off the social media platform" over a "significant amount of time" to create "cradle-to-grave profile[s]"). Even if Ms. Rodriguez allegedly denied the non-essential cookies (*Id.* at ¶¶ 119, 130), "allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024).

*Third*, even if Ms. Rodriguez could have a privacy interest in her record information (she does not), disclosure of record information is not highly offensive. A collection of

"basic contact information" is an "insufficient fit" with "common law privacy torts." *In re Zynga*, 750 F.3d at 1049–50. "Even assuming [Ms. Rodriguez's alleged] information was transmitted without [Ms. Rodriguez'] knowledge and consent, a fact disputed by [Six Flags], such disclosure [of record information] does not constitute an egregious breach of social norms." *In re iPhone Application, Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The Amended Complaint includes a link to Knott's Website's privacy policy. (Am. Compl. ¶¶ 15, 29.) The Knott's Website's privacy policy specifically states that the Knott's Website "may" collect the aggregate information of users who visit or interact with the Knott's Website but such "[a]ggregate information . . . is information that does not identify [the user]." Knott's Berry Farm, Privacy Policy, https://www.knotts.com/legal/privacy-policy (last accessed Oct. 2, 2025). The collection or disclosure of such aggregate information does not breach social norms, much less constitute a highly offensive act to sustain a common law privacy tort.

Counts II and III should therefore be dismissed.

**iv. The Amended Complaint Fails to Plead a Violation of California Penal Code § 631(a).**

As a threshold matter, all CIPA claims related to Ms. Rodriguez's May 2024 Knott's Website interactions should be ignored as such claims fall outside the statute of limitations. The statute of limitations for a CIPA claim is one year. Cal. Civ. Proc. Code § 340. Ms. Rodriguez allegedly visited the Knott's Website on two occasions, first in May 2024 and again in September 2025. (Am. Compl. ¶¶ 86, 92.) Ms. Rodriguez initially filed her complaint on July 22, 2025. (Compl., ECF No. 1.) And she amended the complaint on September 19, 2025. (Am. Compl., ECF No. 14.) Because the allegations about her May 2024 Knott's Website visit fall beyond the one-year statute of limitations, the Amended Complaint's CIPA claims based on these allegations should be dismissed.

Additionally, California Penal Code § 631(a) contains "several different clauses covering 'three distinct and mutually independent patterns of conduct.'" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1013 (C.D. Cal. 2023) (citations omitted). The

Amended Complaint fails to plead a cognizable claim under any of the three clauses.

"The first clause creates a violation if a person 'by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument[.]'" *Id*. (citation omitted). "[C]ourts have repeatedly found that this clause applies only to eavesdropping on 'telegraph and telephone' wires, lines, cables, or instruments, and not to any eavesdropping that is alleged to have occurred as to communications over the internet." *Id*. at 1014. Here, there can be no genuine debate that the Amended Complaint does not allege that any eavesdropping occurred over a telegraph or telephone wire, line, cable, or instrument. (*See* Am. Compl. ¶ 1.) The first clause of Section 631(a) does not apply.

"The second clause creates a violation where a person 'willfully and without consent of all parties to the communication, or in any unauthorized manner reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit.'" *Id*. at 1013. The second clause does not apply here for two independent reasons.

*First*, the second clause only applies to the contents of a message in transit. As set forth above, the Amended Complaint has failed to sufficiently plead that the contents of a communication were intercepted in transit. *See supra* III.B(ii).

*Second*, Six Flags cannot be liable because it was a party to the alleged conversation. *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023) ("California law is well settled that a party to the communication is not liable for recording their own conversation under section 631(a)[.]"). "Federal courts" have likewise "routinely affirmed . . . that a party cannot eavesdrop on its own conversation." *Id*. at 1107. Six Flags, as a party to any alleged conversation here, is therefore exempt under the party exception.

"The third clause . . . prohibits using, or attempting to use, information gained in violation of the first or second clause 'in any manner, or for any purpose.'" *Heiting* at 1015. Given that the first two clauses do not apply, the third clause cannot apply either.

*Id.*

In addition to the three clauses, "section 631 also contains an aiding and abetting provision, which imposes liability on anyone who 'aids, agrees with, employs, or conspires with any persons or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Id*. at 1013–14. The Amended Complaint fails to identify what contents of a communication were intercepted by a third party. Instead, the Amended Complaint posits conclusory, generic language such as "wiretapped information," "Private Communications," "website interactions," and "user input data." (Am. Compl. ¶¶ 145, 149.) Not only are these terms undefined, but the Amended Complaint does not identify whether Ms. Rodriguez provided such information to the Knott's Website. (*See generally id.* ¶¶ 92–99.) Put simply, the Amended Complaint's conclusory and vague terms fail to plead the facts necessary to identify the actual contents of a communication that were never intercepted by a third party. Because the Amended Complaint lacks allegations of substantive communication, Six Flags could not have aided any third-party to violate Section 631(a). Count IV should therefore be dismissed.

**v. The Amended Complaint Fails to Plead a Violation of California Penal Code § 638.51.**

The Amended Complaint does not state a cognizable claim for a violation of California Penal Code § 638.51. A claim under California Penal Code § 638.51 is irreconcilable with both a Federal Wiretap Act claim and California Penal Code § 631(a). As explained above, Section 2511 of the Federal Wiretap Act and Section 631(a) only apply to interceptions of the ***contents*** of communications. Meanwhile, California's restrictions on a "trap and trace device" applies only to ***identifying information*** about the communication and "not the contents of a communication." Cal. Pen. Code § 638.50(c). The court in *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 5:25cv1473, 2025 U.S. Dist. LEXIS 120002, at *11 (N.D. Cal. June 24, 2025), explained:

> If [defendant] only collects information regarding the 'metadata' of the communication, [plaintiff's] right to privacy is not invaded because [she] has

> no expectation of privacy as to that type of data (e.g., [her] IP address or general geographic location). If [defendant] instead collects content information from communication between the parties (e.g., information provided from [plaintiff] to [defendant] directly), the [tracking technologies are] not a trap and trace device and § 638.50 does not apply.

Regardless of whether this claim is pled in the alternative to Count I, Count V fails as a matter of law because the tracking technologies alleged in the Amended Complaint are not trap and trace devices.

"California Rules of statutory interpretation seek to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" *Meza v. Portfolio Recovery Assocs., LLC*, 860 F.3d 1218, 1222 (9th Cir. 2017) (citing *State Farm Mut. Auto Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 88 P.3d 71, 78 (Cal. 2004)). "California courts also 'read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" *Id*. The alleged pixels at issue here, however, are not a trap and trace devices under the statutory scheme.

Under Section 638.51, "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Pen. Code § 638.51(a). A trap and trace device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.50(c). The definition of a trap and trace device does not include any reference to website technologies, such as those alleged here.

Further, a trap and trace device under the statutory scheme is specific to devices that operate on a telephone. For example, Section 638.52 sets forth the procedure for obtaining a written court order to install a trap and trace device. Cal. Pen. Code § 638.52. Such an order must specify, in part: "[t]he identity, if known, of the person to whom is leased or in whose name is listed *the telephone line* to which the pen register or trap and trace device

is to be attached" and "[t]he number and, if known, physical location of *the telephone line* to which the pen register or trap and trace device is to be attached[.]" Cal. Pen. Code § 638.52(d) (emphasis added). In addition, subsection (c) states that "[i]nformation acquired solely pursuant to the authority for . . . a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from *the telephone number*." Cal. Pen. Code § 638.52(c) (emphasis added). In sum, the information that is statutorily required to be included in an order for a trap and trace device *must* include a telephone number. Thus, a trap and trace device simply cannot be used outside the bounds of telephone technology.

Its legislative history also points to a narrow statutory interpretation. Section 638 directly copies the "trap and trace device" definition from federal law. *See* 18 U.S.C. § 3127(4). At the time the California legislature copied these definitions, it is well established that these devices strictly related to telephone lines. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *In re The Application of the United States of America for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (finding "from the construction of related sections of the statutes governing trap and trace devices that they include only devices that are attached to a telephone line").

Courts have rejected recent attempts to expand the narrow statutory definition of a trap and trace device. For example, in *Sanchez v. Cars.com*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Sup. Ct. Jan. 27, 2025), the court sustained a demurrer to a similar Section 638.51 claim filed by Ms. Rodriguez's counsel, holding:

> Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement

> officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. Thus, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.

*Id*. at *8.

In *Licea v. Hickory Farms, LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Sup. Ct. Mar. 13, 2024), the court dismissed a claim under Section 638.51 and held that "[l]egislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications." *Id*. at *7. Likewise, in *Hughes v. Dave & Buster's Ent., Inc.*, No. 25STCV10250 (Cal. Sup. Ct. July 15, 2025), the court dismissed a claim under Section 638.51 and refused to expand the definition of a trap and trace device to include internet communications. This Court should likewise refuse to expand the statute's scope.

**vi. This "Tester" Plaintiff Also Lacks Statutory Standing Under California Penal Code § 637.2.**

The Amended Complaint cites California Penal Code § 637.2 in conclusory fashion to imply that there is a private right of action for alleged violations of Sections 631(a) and 638.51. (Am. Compl. ¶¶ 154, 167.) Section 637.2 provides: "[a]ny person ***who has been injured*** by a violation of this chapter may bring an action against the person who committed the violation for the greater of . . . (1) Five thousand dollars ($5,000) per violation[,] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." Cal. Pen. Code § 637.2(a) (emphasis added). Because the Amended Complaint

fails to identify how Ms. Rodriguez has been injured by Six Flags' alleged violations of Sections 631(a) or 638.51, Ms. Rodriguez lacks statutory standing to bring either claim.

Section 637.2's plain language requires an "injury." *Yoon*, 549 F. Supp. 3d at 1085 ("Happily, however, the language of CIPA is far more straightforward than the analogous language of the Wiretap Act: only a person 'who has been injured by a violation of this chapter' may assert a civil claim."). The Amended Complaint lacks a single fact about what data of Ms. Rodriguez's was collected or intercepted, if any. (*See generally* Am. Compl.) Indeed, Ms. Rodriguez admits that she is nothing more than a "tester" plaintiff and concedes that it is unclear "what data, *if any*, is being sent to whom." (*Id*. ¶¶ 86, 99.) Instead, the Amended Complaint generically states that "[p]ursuant to California Penal Code § 637.2, Plaintiff has been injured[.]" (*Id*. ¶ 154.) Consequently, Ms. Rodriguez has failed to plead an injury necessary to bring a claim under Section 637.2. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) ("agree[ing]" that "construal of § 637.2 as providing a private right of action for a violation of § 635 would be unconstitutional, as it would provide Plaintiff a cause of action without suffering injury-in-fact").

Counts IV and V should therefore be dismissed.

**vii. The Amended Complaint Fails to Properly Plead a Common Law Fraud Claim with Particularity.**

The Amended Complaint fails to plead all elements of common law fraud with particularity. Claims for fraud must satisfy a heightened pleading standard. Fed. R. Civ. P. 9(b). The elements of fraud include (1) misrepresentation, (2) knowledge, (3) intent, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996). The Amended Complaint fails to plead facts establishing all essential elements of Ms. Rodriguez's fraud claim.

The Amended Complaint includes speculative allegations of knowledge in claiming that Six Flags "knew, or should have known" about the functionality of its website and third-party cookies. (Am. Compl. ¶ 171.) This conclusory allegation fails to provide supporting facts to show actual knowledge of falsity at the time the alleged

misrepresentations were made. *See JST Distrib., LLC v. CNV.com, Inc.*, No. CV 17-6264 PSG (MRWx), 2018 U.S. Dist. LEXIS 222222, at *17 (C.D. Cal. Mar. 7, 2018) (allegation that defendant "knew, or should have known" is "merely conclusory"). The Amended Complaint also fails to adequately allege how Ms. Rodriguez justifiably relied on the alleged misrepresentations to her detriment. Ms. Rodriguez's vague assertion that she "would not have interacted with the [Knott's] Website" is insufficient to establish the element of justifiable reliance with the particularity required by Rule 9(b). (Am. Compl. ¶ 175.)

In addition, the Amended Complaint generically implies that Ms. Rodriguez "suffered an injury-in-fact, including the loss of money and/or property," from browsing through the Knott's Website – without more. (Am. Compl. ¶ 173.) This falls well short of the heightened pleading standard for fraud, let alone pleading a plausible fraud claim. *See Ashcroft*, 556 U.S. at 678. Indeed, the Amended Complaint itself questions "what data, *if any*, is being sent to whom." (Am. Compl. ¶ 99 (emphasis added).) Such vague speculation is not actionable. *See B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 508 (9th Cir. 2006) ("Under California law, speculative fraud damages are not actionable.") (citation omitted).

Count VI should therefore be dismissed.

**viii. The Amended Complaint Fails to State a Cognizable Unjust Enrichment Claim.**

There is no independent cause of action for unjust enrichment in California. *See City of Oakland v. The Oakland Raiders*, 83 Cal. App. 5th 458, 476 (2022); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Regardless, to bring an unjust enrichment claim as an independent cause of action, Six Flags "must [have] received and retained a financial benefit from [Ms. Rodriguez's] data." *Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842-JST, 2023 U.S. Dist. LEXIS 90180, at *14 (N.D. Cal. Mar. 30, 2023). However, the Amended Complaint fails to allege any nonspeculative "economic benefit" Ms. Rodriguez provided to Six Flags.

(*See, e.g.*, Am. Compl. ¶ 183.) Nor does the Amended Complaint plead plausible facts to explain how Six Flags monetized Ms. Rodriguez's data or information at her expense, especially when the Amended Complaint itself concedes lack of knowledge "if any" data was disclosed. (*See id.* ¶ 99.)

Nor does the Amended Complaint allege why it would be unjust for Six Flags to retain any (non-existent) benefit under the circumstances. The Amended Complaint asserts in a conclusory manner that Six Flags' alleged misrepresentations about cookie tracking constitute the basis for unjust enrichment. (Am. Compl. ¶ 182.) However, such allegations are not enough. *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (dismissing unjust enrichment claims where "Plaintiff [did] not allege[] that Defendant's alleged omission impacted her conduct in any way; thus, she [did] not allege[] the omission was material, that she relied on the omission, or that the omission caused her any injury."); *Swearingen v. Healthy Bev., LLC*, No. 13-cv-04385-EMC, 2017 U.S. LEXIS 66938, at *15 (N.D. Cal. May 2, 2017) (finding unjust enrichment claim failed where plaintiffs did not sufficiently allege detrimental reliance on defendants' misrepresentations). Count VII should therefore be dismissed.

**C. Even If Ms. Rodriguez Pled a Cognizable Claim, the Case Should be Transferred Under the Terms of Use Plaintiff Relies Upon in the Amended Complaint.**

Should this Court find that Ms. Rodriguez has pled a cognizable claim, this Court should nonetheless find that by including the terms of use in the Amended Complaint, Ms. Rodriguez has admitted that those terms are binding here. (*See* Am. Compl. ¶¶ 15, 29–30.) Thus, Ms. Rodriguez is bound by the forum selection clause contained in those terms of use and this case should be transferred to the Northern District of Ohio. Enforcement of a forum-selection clause is proper through a motion to transfer venue under 28 U.S.C. § 1404(a). *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.D. of Texas*, 571 U.S. 49, 59 (2013). By including the terms of use in the Amended Complaint, Ms.

Rodriguez admits that the Knott's Website's terms of use are applicable here.

According to the Amended Complaint, the Knott's Website "lull[s]" visitors "into a false sense of security." (Am. Compl. ¶ 2.) In support of this argument, the Amended Complaint cites Knott's Website's privacy policy and California-specific disclosures. (*Id.* ¶¶ 15, 29–33.) That policy states, "[t]his Privacy Policy is incorporated into, and is part of, our Terms of Use available at www.knotts.com/legal which govern your access to the Site and your use of the Site and/or services." (*Id.* ¶¶ 15, 29.) Those terms of use contain the following binding forum selection clause:

> These Terms of Use are governed by the laws of the State of Ohio, U.S.A. without regard to conflicts of laws principles. **Any action you bring relating in any way to these Terms of Use or any matters related to the Sites shall be brought in either the State or Federal Courts located in Erie County, Ohio and you expressly consent to the jurisdiction of said courts.** If any provision of this Agreement is void or unenforceable in whole or in part, the remaining provisions of this Agreement shall not be affected thereby. Any cause of action you may have with respect to your use of these Sites must be commenced within one (1) year after the claim or cause of action arises, otherwise the cause shall be forever barred. Access or use of the Sites is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, including without limitation this paragraph.

Knott's Berry Farm, Privacy Policy Legal Terms of Use, https://www.knotts.com/legal (last accessed Oct. 2, 2025) (emphasis added).

It is well-settled that "forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Cairo, Inc. v. Crossmedia Servs.*, No. C 04-04825, 2005 U.S. Dist. LEXIS 8450, *10 (N.D. Cal. Apr. 1, 2005) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The forum selection clause here is clear: any action related to

Knott's Website must be brought to a state or federal court in Erie County, Ohio. By including the privacy policy and the accompanying terms of use in the Amended Complaint, Ms. Rodriguez admits that she was both aware of the privacy policy and the terms of use and therefore bound by the same. (Am. Compl. ¶¶ 15, 29–33.) Put simply, Ms. Rodriguez cannot pick and choose which terms should be enforced, she is bound by the terms that form the basis of the Amended Complaint. (*See id.*)

This Court should find that Ms. Rodriguez is bound by the forum selection clause and transfer this matter to the Northern District of Ohio.

**IV. CONCLUSION**

For the foregoing reasons, Six Flags respectfully requests the Court grant its Motion to Dismiss.

DATED: October 3, 2025 VORYS, SATER, SEYMOUR AND PEASE LLP

By: */s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman
Attorney for Defendant
SIX FLAGS ENTERTAINMENT CORPORATION

**CERTIFICATE OF COMPLIANCE**

On October 3, 2025, the undersigned, counsel of record for Six Flags Entertainment Corporation, certifies that this brief contains 6983 of words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

*/s/ Jocelyn M. Hoffman*
Jocelyn M. Hoffman