**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REBEKA RODRIGUEZ,

Plaintiff,

v.

SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.KNOTTS.COM,

Defendant.

Case No. 2:25-cv-066661-DMG-AGR

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

[Declarations of Rebeka Rodriguez and Scott J. Ferrell; Proposed Order filed concurrently herewith]

Date: October 31, 2025
Time: 9:30 a.m.
Courtroom: 8C
Judge: Hon. Dolly M. Gee

## TABLE OF CONTENTS

**Page(s)**

I. ARGUMENT ........ 1

A. Plaintiff Has Standing to Sue. ........ 1

1. Plaintiff Can Have Standing Even as a "Tester". ........ 1

2. Identifiers Such as An IP Address and Geolocation Data and Browsing History Constitute a Consumer's Personal Information in California as Recognized by California Statutes, Which Supports a Reasonable Expectation of Privacy. ........ 5

3. The Website Has Embedded the Third-Party Cookies of a Data Broker and Other Entities to Surveil Users of the Website. ........ 7

B. Plaintiff's CIPA Claims Based Upon Plaintiff's May 2024 Visit to the Website Are Not Barred by the Statute of Limitations. ........ 11

C. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code. ........ 11

1. Numerous Federal District Courts Have Recognized that Similar Third-Party Spyware Is Either a "Pen Register" or a "Trap and Trace Device". ........ 11

2. The Website's Spyware Qualifies as a "Device or Process" Because It Constitutes "Software that Identifies Consumers, Gathers Data, and Correlates that Data." ........ 12

3. The IP Addresses Collected by the Website's Spyware Qualify as "Addressing Information." ........ 14

4. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted." ........ 14

5. The Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong. ........ 15

D. Plaintiff's Other Claims Are Plausibly Alleged. ........ 15

E. Defendant's Forum Selection Clause Argument Is Without Merit. ........ 16

**CERTIFICATE OF COMPLIANCE** .......................................................... 221

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bayer v. Neiman Marcus Group, Inc.*,
861 F.3d 853 (9th Cir. 2017) ....................3

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................7

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................15, 16

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................4

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 4195768 (C.D. Cal. May 18, 2023) ....................4

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ....................2

*California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
2023 WL 1873087 (N.D. Cal. Feb. 9, 2023) ....................2

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................5

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................4

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ....................17

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) .................... 1, 2, 3, 4

*Commonwealth v. Biden*,
57 F.4th 545 (6th Cir. 2023) ....................2

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ....................................................12

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
91 F.4th 342 (5th Cir. 2024) ..............................................................................2

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)..............................................................16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........................................................................10, 11

*Federal Election Comm'n v. Cruz*,
596 U.S. 289 (2022)........................................................................................1, 2

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ............................... 10, 12, 15, 16

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 N.D. Cal Jul 14, 2025)...............................................12, 15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).................................................. 5, 12, 13

*Hart v. TWC Product and Technology, LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ...............................................................11

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)......................................................................................1, 2, 3

*Heiting v. FKA Distributing Co. LLC*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) ....................................................12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ..... 10, 11, 16

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .....................................................5

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................5

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ...............................................................6, 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*In re Meta Pixel Tax Filing Cases*,
- F. Supp. 3d -, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) .......... 12

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 14, 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 13, 14

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 5

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 10

*Kentucky v. Yellen*,
54 F.4th 325 (6th Cir. 2022) .......... 2

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .......... 1

*Laufer v. Naranda Hotels, LLC*,
60 F.4th 156 (4th Cir. 2023) .......... 2

*Legacy Health Sys. v. Hathi*,
2024 WL 2843034 (9th Cir. Cir. June 5, 2024) .......... 2

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .......... 12, 14, 15

*Mireskandari v. Daily Mail and General Trust PLC*,
2013 WL 12114762 (C.D. Cal. Oct. 8, 2013) (Morrow, J.) .......... 11

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 6, 12, 14

*Moody v. C2 Educ. Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 12

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 16, 17, 18, 19

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................................................................17

*Popa v. Microsoft Corp.*,
- F.4th -, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ................................10, 11

*Riganian v. Liveramp Holdings, Inc.*,
- F. Supp. 3d -, 2025 WL 2021802 (N.D. Cal. July 18, 2025); ....................12, 15

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......................................... 2, 3, 4, 5

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ...........................................................12

*Rojas v. City of Ocala, Fl.*,
40 F.4th 1347 (11th Cir. 2022) .......................................................................2

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)................................................... 5, 12, 14

*Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*,
121 F.4th 1374 (10th Cir. 2024) .....................................................................2

*Smith v. Pacific Properties and Dev. Corp.*,
358 F.3d 1097, 1102-04 (9th Cir. 2004).........................................................3

*Stenson Tamaddon, LLC v. United States Internal Revenue Service*,
742 F. Supp. 3d 966 (D. Ariz. 2024) ...............................................................2

*Taylor v. Salvation Army Nat'l Corp.*,
110 F.4th 1017 (7th Cir. 2024) .......................................................................2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................ 4, 10, 13

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*,
489 U.S. 749, 763 (1989)..............................................................................10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) .......................................................................14

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) .......................................................................4, 5

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 12

*Zeichner v. Nord Security Inc.*,
2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ........ 8

**California Cases**

*B.D. v. Blizzard Enter., Inc.*,
76 Cal. App. 5th 931 (2022) ........ 18

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993) ........ 3

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ........ 6

*Rattagan v. Uber Techs., Inc.*,
17 Cal.5th 1 (2024) ........ 8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 9, 10

*Sanders v. Am. Bd. Co., Inc.*,
20 Cal.4th 907 (1999) ........ 5

*Sellers v. Just Answer LLC*,
73 Cal. App. 5th 444 (2021), *rev. denied*, No. S273056 (Apr. 13, 2022) 17, 18, 19

*Shulman v. Group W Productions, Inc.*,
18 Cal.4th 200 (1998) ........ 4, 5

**U.S. Constitution**

First Amendment ........ 2

Article III ........ 2, 4

**Federal Statutes**

42 U.S.C.
§ 3601 *et seq.* ........ 3
§ 3604(a) ........ 3
§ 3604(d) ........ *passim*
§ 3604(f)(2) ........ 3, 4

§ 12181 *et seq.* .......... 3
§ 12182(a) .......... 4
§ 12182(b)(1)(A)(iv) .......... 3
§ 12188 .......... 3
Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990) .......... 1, 3
Title III of the Americans with Disabilities Act of 1990 .......... 3
Fair Housing Act, Pub. L. No. 90-284, 82 Stat. 81 (1968) .......... 3
Title III of Omnibus Crime Control and Safe Street Act of 1968 (Wiretap Act), Pub. L. No. 90-351, 82 Stat. 197 (1968) .......... 13, 14, 15
Pen Register Act .......... 14
USA Patriot Act of 2001, Pub. L. No. 107–56 § 216, 115 Stat. 272 (2001) .......... 14

**California Statutes**

Civil Code
§ 1798.99.80(c) .......... 7
§ 1798.100(a) .......... 8
§ 1798.100(a)(1)-(3) .......... 8
§ 1798.100(b) .......... 8
§ 1798.140 .......... 7
§ 1798.140(v)(1)(A) .......... 6
§ 1798.140(v)(1)(F) .......... 6
§ 1798.140(v)(1)(G) .......... 6
§ 1798.175 .......... 6
California Consumer Privacy Act .......... 6, 8, 9, 19

Code of Civil Procedure
§ 335.1 .......... 11
§ 340 .......... 11

Penal Code
§ 630 *et seq.* .......... 11
§ 631 .......... 13
§ 631(a) .......... 15, 16
§ 637.2(a) .......... 3
§ 638.50 .......... 14, 15
§ 638.50(b) .......... 15
§ 638.50(c) .......... 13, 14, 15
§ 638.51 .......... 6, 11, 12
§ 638.52 .......... 14

§ 1546 *et seq.* ....................................................................................6
§ 1546(d) ..........................................................................................6
§ 1546(h) ..........................................................................................6
§ 1546.1(a)(1) ....................................................................................6
§ 1546.1(b) ........................................................................................6
§ 1546.4(a) .........................................................................................6
California Electronic Communications Privacy Act ...........................................6
California Invasion of Privacy Act .................................................... 4, 6, 11, 14

**State Regulations**

11 C.C.R.
§ 7000(a) ...........................................................................................8
§ 7001(q) ...........................................................................................8
§ 7012.................................................................................................8
§ 7012(c) ............................................................................................8
§ 7012(c)(1)........................................................................................8
§ 7012(d) ............................................................................................8

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5...............................................................................................1
n.61......................................................................................................1
n.70......................................................................................................1
n.73......................................................................................................1

https://cppa.ca.gov/data_broker_registry/ (last visited Oct. 9, 2025)........................7

Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) .......................................................................................14

S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968) .......................................................14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT

### A. Plaintiff Has Standing to Sue.

#### 1. Plaintiff Can Have Standing Even as a "Tester".

Although Defendant argues that Plaintiff, a "tester," cannot have standing to sue because she suffered a self-inflicted injury, (Def.'s Mem. at 6:25-7:10), a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing. It is clear, however, that no rigid lines are drawn on this basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper"). That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* § 3531.5 & n.70. "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61; *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*") (citing *Havens*), *cited in Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *id.* at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"). *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See Federal Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

In *Cruz*, the federal Government argued that Senator Ted Cruz and other plaintiffs

lacked "standing because their injuries were 'self-inflicted,'"[1] *id.* at 296, and asked the Supreme Court "to recognize an exception to traceability for injuries that a party purposely incurs," *id.*, but the Supreme Court unequivocally rejected such challenge:

> "We have never recognized a rule of this kind under Article III. To the contrary, ***we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred***."

*Id.* at 297 (emphasis added) (citing *Havens Realty*, 455 U.S. at 374). Numerous federal circuit courts including the Ninth Circuit have followed *Cruz* for such proposition. *Legacy Health Sys. v. Hathi*, 2024 WL 2843034, at *1 (9th Cir. Cir. June 5, 2024) (citing *Cruz*).[2]

*California v. Azar*, 911 F.3d 558, 573-74 (9th Cir. 2018), also supports Plaintiff's position. *California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 2023 WL 1873087, at *10 (N.D. Cal. Feb. 9, 2023) (characterizing *Azar* as concluding that California had standing to sue because "even though one could have argued that the state contributed to its own injury, the state was not so ***solely at fault*** that it was proper to deem the injury self-inflicted") (emphasis added).

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1-*2 (C.D. Cal. Apr. 4, 2025), is both distinguishable and is unpersuasive. First, although *Autotrader.com* purported to distinguish *Cruz* as a "First Amendment" case, 2025 WL 1085787, at *1, it failed to consider *Azar*.

Second, although *Autotrader.com* purported to distinguish *CREEC* as involving

[1] Senator Cruz and his campaign both stipulated that their "sole and exclusive motivation" for violating the campaign-finance restriction in federal law was to create a factual basis for challenging such restriction under the First Amendment. 596 U.S. at 296.

[2] *See, e.g.*, *Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*, 121 F.4th 1374, 1378 (10th Cir. 2024); *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024); *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 351 (5th Cir. 2024); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 170-171 (4th Cir. 2023); *Commonwealth v. Biden*, 57 F.4th 545, 555-56 (6th Cir. 2023); *Kentucky v. Yellen*, 54 F.4th 325, 345-46 (6th Cir. 2022); *Rojas v. City of Ocala, Fl.*, 40 F.4th 1347, 1351 (11th Cir. 2022); *Stenson Tamaddon, LLC v. United States Internal Revenue Service*, 742 F. Supp. 3d 966, 982-83 (D. Ariz. 2024).

"ADA claims," it failed to recognize that invasion of privacy and civil rights claims both implicate harm to a dignitary interest. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("Any invasion of privacy involves an affront to human dignity"); *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017) (recognizing "the dignitary interest at stake when an action alleges a violation of a statute intended to safeguard civil rights").

Third, *Autotrader.com* failed to recognize that the reason why *CREEC*, which involved a claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, followed *Havens*, the latter of which involved a claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, is because both statutes used identical language to describe who had standing to sue, which was "any person." *CREEC* noted that "the ADA's enforcement provision, [42 U.S.C.] § 12188, provides that ' '*any person* who is being subjected to discrimination on the basis of disability' may bring suit,' exactly tracking the 'any person' language of *Havens Realty* [in 42 U.S.C. § 3604(d)]." 867 F.3d at 1101-02 (emphasis in original). Likewise, the "[a]ny person" language in section 637.2(a) of the Penal Code "exactly track[s] the 'any person' language of *Havens Realty*" too.

Significantly, the "absence of limiting language" "limit[ing] standing to sue under discrimination statutes to certain groups of people" such as persons who make a "bona fide offer" to rent or purchase a dwelling under the FHA, 42 U.S.C. § 3604(a), or "clients or customers of the covered public accommodation," 42 U.S.C. § 12182(b)(1)(A)(iv) under Title III of the ADA, was crucial to the outcomes in both *Havens* and *CREEC*. *CREEC*, 867 F.3d at 1101-02.

Indeed, *CREEC* cited with approval *Smith v. Pacific Properties and Dev. Corp.*, 358 F.3d 1097, 1102-04 (9th Cir. 2004), the latter of which involved a different provision of the FHA, 42 U.S.C. § 3604(f)(2), than what was addressed at *Havens*. *CREEC*, 867 F.3d at 1101. *Smith* held that "[t]he district court … erred as a matter of law in interpreting § 3604(f)(2) to preclude tester standing." 358 F.3d at 1104. *Smith* reasoned that § 3604(f)(2) was not limited to bona fide purchasers based on its language. 358 F.3d at

1103-04; 42 U.S.C. § 3604(f)(2) ("it shall be unlawful … [t]o discriminate against ***any person*** in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--(A) that person.") (emphasis added).

Thus, *Autotrader.com* engaged in a limited analysis of *CREEC* that ignored the "absence of limiting language" in the relevant statutes analyzed therein including 42 U.S.C. § 12182(a) ("***[n]o individual*** shall be discriminated against on the basis of disability") (emphasis added).

Fourth, although *Autotrader.com* cited in support *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) ("*Sterling Jewelers I*"), such latter decision expressly stated that with respect to the court's Article III standing analysis, "the Court's analysis does not depend on Plaintiff's status as a tester[.]"[3] *Id.* at *4 n.3.

Fifth, *Autotrader.com* failed to recognize that the reasonable expectation of privacy legal standard is ***objective***, not subjective under California law. *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 232 (1998) (holding that the tort of intrusion into private places, conversations or matter "is proven only if the plaintiff had an ***objectively*** reasonable expectation of seclusion or solitude in the place, conversation or data source") (emphasis added). Thus, *Autotrader.com* erred by applying a ***subjective*** standard to the plaintiff therein.

Sixth, *Autotrader.com* failed to address or distinguish *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer***

[3] *Sterling Jewelers I* also subsequently abandoned reliance upon the defendant's facial challenge after the plaintiff therein moved for reconsideration and relied upon *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118-19 (9th Cir. 2020), which held that a statutory violation of CIPA would satisfy the concrete injury requirement for Article III standing. (Doc. 46 at 9:1-3 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) The court instead relied solely upon the defendant's factual challenge in a subsequent order denying such motion for reconsideration that was limited to its unique facts. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023) ("the Court need not decide whether *Campbell* states the absolute rule advanced by Plaintiff or whether such a rule survives *TransUnion*") ("Because Plaintiff has not shown that dismissal based on Zale's factual challenge constituted manifest error of law or fact, it is immaterial whether Zale's facial challenge presented an independent basis for dismissal."). *Sterling Jewelers I* should be limited to its unique facts at issue therein.

***consent***") (emphasis added); *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent.") (emphasis in original); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."). Thus, *Autotrader.com* conflicts with Ninth Circuit precedent.

Seventh, *Autotrader.com* implicitly found implied consent to the wrongdoing alleged therein without recognizing that "[t]he critical question with respect to implied consent is whether the parties whose communications were intercepted had ***adequate notice*** of the interception." *In re Google*, 2013 WL 5423918, at *12 (emphasis added).

Finally, *Autotrader.com* failed to recognize that "'[c]onsent is … generally limited to the specific conduct authorized.'" *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023) (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data disclosure). As the California Supreme Court has explained:

> "[W]e adhere to the view suggested in *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."

*Sanders v. Am. Bd. Co., Inc.*, 20 Cal.4th 907, 915-16 (1999) (recognizing an "expectation of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12).

**2. Identifiers Such as An IP Address and Geolocation Data and Browsing**

**History Constitute a Consumer's Personal Information in California as Recognized by California Statutes, Which Supports a Reasonable Expectation of Privacy.**

Defendant's contention that Plaintiff lacked a reasonable expectation of privacy is wrong.[4] Over the past decade, California law has expressly recognized a legally protected privacy interest in IP addresses. For example, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception. (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

More recently, in 2018, the California Legislature enacted into law the CCPA,[5] which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," "Geolocation data," and "Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement," all constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A), (F), (G)). The CCPA's recognition supports a reasonable expectation of privacy in such personal information. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared

---

[4] It is well established that a reasonable expectation of privacy is a concept derived from the common law. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 27 (1994) (referring to "the common law's insistence on objectively reasonable expectations of privacy"). It is not a required element of the ***statutory*** cause of action at issue herein for violation of section 638.51.

[5] Notably, the CCPA does not preempt CIPA. *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control").

and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1077-79 (N.D. Cal. 2021) (allegations that Google collected a "profile of users" "collected secretly … without any notice to users" via "fingerprinting techniques, system data, and geolocation data" sufficient to plead a reasonable expectation of privacy because "users' Internet activity" "may reveal" "a user's private plans for the future (e.g., purchasing of an engagement ring)" and plaintiffs "could have reasonably assumed that defendant "could have reasonably assumed that Google would not receive their data … based on Google's representations").

The defendant's representations in *Brown* that led the plaintiffs therein to believe that they could manage their privacy, *Brown*, 525 F. Supp. 3d at 1078, are no different than the misleading CMP at issue herein. (FAC ¶¶ 67-80; 92-98.)

### 3. The Website Has Embedded the Third-Party Cookies of a Data Broker and Other Entities to Surveil Users of the Website.

The Website has embedded the software code of at least one data broker[6] (*i.e.*, Claritas LLC) registered with the California Privacy Protection Agency, *see* https://cppa.ca.gov/data_broker_registry/ (last visited Oct. 9, 2025), to collect ***personal information*** from Website users via software code embedded into the Website. (FAC ¶¶ 43-50.) The reason why such data broker (and other third party cookie developers) have embedded their code on the Website so that their third-party cookies are downloaded onto the devices and browsers of Website visitors and stored there is because they are harvesting visitor data, building profiles of consumers, and monetizing "segmented" audiences via targeted advertising and marketing campaigns. Indeed, Defendant's

[6] Under California's law regulating data brokers, a '"Data broker' means a business that knowingly collects and sells to third parties the ***personal information*** of a consumer with whom the business does not have a direct relationship." (Civ. Code § 1798.99.80(c) (emphasis added).)

California Consumer Privacy Act Notice states, "We do share your personal information to process for the purpose of targeted advertising." (FAC ¶ 31.)

"A duty to disclose a material fact can arise if … it is imposed by statute…." *Zeichner v. Nord Security Inc.*, 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024) (quoting *Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1, 40 (2024)). Here, the CCPA and its regulations imposed upon Defendant a statutory duty to disclose material facts about its collection of personal information from California consumers who used the Website to avoid misleading such consumers about the nature of its personal information collection practices on the Website in both May 2024 and September 2025 (during Plaintiff's visits to the Website). Defendant was required to provide a "Notice at Collection" of personal information in compliance with the CCPA, (Cal. Civ. Code § 1798.100(a)(1)-(3)), and California's regulation at 11 C.C.R. § 7012 at that time, which are part of the California Consumer Privacy Act Regulations. 11 C.C.R. § 7000(a). Such Regulations define "Notice at Collection" to mean "the notice given by a business to a consumer at or before the point at which a business collects personal information from the consumer as required by Civil Code section 1798.100, subdivisions (a) and (b), and specified in these regulations." 11 C.C.R. § 7001(q).

Section 7012 provides, "The Notice at Collection shall be made readily available where consumers will encounter it at or before the point of collection of any personal information." 11 C.C.R. § 7012(c). Such regulation provides an "[i]llustrative example" as follows: "When a business collects consumers' personal information online, it may post a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." 11 C.C.R. § 7012(c)(1). Section 7012 provides, "If a business does not give the Notice at Collection to the consumer at or before the point of collection of their personal information, the business shall not collect personal information from the consumer." 11 C.C.R. § 7012(d).

In May 2024, Plaintiff visited the Website to browse it. (FAC ¶ 86.) At the time of Plaintiff's use, there was no cookie banner otherwise known as a consent management

platform ("CMP") displayed at the outset of her visit to the Website notifying Plaintiff about what categories of cookies would be attached to Plaintiff's browser and computer device resulting from her use of the Website. (FAC ¶ 87.) Defendant failed to provide a Notice at Collection in accordance with the CCPA during Plaintiff's May 2024 visit. (FAC ¶¶ 87-88.) Such violations of the CCPA constitute material omissions by Defendant arising from a statutorily-prescribed duty. During Plaintiff's visit to the Website, third party cookies began to surreptitiously collect information about Plaintiff's device and Plaintiff's interactions with the Website the moment that Plaintiff landed on the Website. (FAC ¶ 91.) Because of the absence of a "Notice at Collection" on the homepage of the Website during her visit, as a California resident, Plaintiff reasonably relied upon the absence of such Notice at Collection to indicate that the Website was not collecting, using, or sharing Plaintiff's personal information with any third parties during such visit. (FAC ¶ 90.) This affected Plaintiff's use of the Website in terms of her browsing history. Unbeknownst to her, Plaintiff's use of the Website including her browsing history were recorded by third-party cookies and shared with third-party cookie developers whose third-party cookies and spyware were embedded onto the Website and downloaded onto Plaintiff's device and browser upon her visiting the Website.

Although Plaintiff re-visited the Website in September 2025, encountered a CMP that provided her with the option to "Deny Non-Essential" cookies, and made such selection, Plaintiff's investigation has determined that the Website is misconfigured to allow such non-essential third-party cookies to function despite the user's selection. (FAC ¶¶ 92-97.)

Defendant's violation of its statutory obligation to disclose its personal information gathering practices via a Notice at Collection and its deceptive representation on its CMP are both highly offensive to a reasonable person, which support Plaintiff's position that she was harmed by Defendant's conduct, which deprived her of the ability to control personal information regarding her digital activity and profile, which federal courts have treated as enough to show a concrete injury to a right to privacy. *Ribas v. Clark*, 38 Cal.

3d 355, 360 (1985) ("secret monitoring [of telephone calls] denies the speaker an important aspect of privacy of communication –the right to control the nature and extent of firsthand dissemination of his statements"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (holding that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person'") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*, 489 U.S. 749, 763 (1989)), *cert. denied*, 141 S. Ct. 1684 (2021); *Eichenberger*, 876 F.3d at 983 ("the Supreme Court has noted that 'both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.' And this court has consistently found that '[v]iolations of the right to privacy have long been actionable at common law.'") (internal citation omitted); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5-*8 (N.D. Cal. Aug. 29, 2025) ("The Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion[ LLC v. Ramirez*, 594 U.S. 413 (2021)].").

To the extent that Defendant relies upon *Popa v. Microsoft Corp.*, - F.4th - , 2025 WL 2448824 (9th Cir. Aug. 26, 2025), in its Reply to argue that Plaintiff lacks standing to sue, *Popa* is distinguishable for the same reasons explained in *Haleon*. For example, the plaintiff in *Popa* "did not challenge the storage and/or transmission of cookies…." *Haleon*, 2025 WL 2494368, at *7. Thus, the nature of the privacy invasion was far more serious therein just as it is serious here unlike in *Popa* whereby the "technology was not alleged to track anything beyond [the plaintiff's] interactions with the website she chose to visit., and the information gathered was only alleged to be used by the owner of that website." *Id.* As was the case in *Haleon*, the tracking cookies "are capable of tracking [users'] browser[s] across other sites and building up a profile of [users'] interests." *Id.* at *8. That is unlike the alleged harm at issue in *Popa*.

And, *Popa* conflicts with Ninth Circuit precedent recognizing that the right to privacy dating back to the common law encompasses "the individual's control of information concerning his or her person" such as "an individual's likes, dislikes, interests, and habits" without imposing a confidential information requirement. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598; *Eichenberger*, 876 F.3d at 983.

**B. Plaintiff's CIPA Claims Based Upon Plaintiff's May 2024 Visit to the Website Are Not Barred by the Statute of Limitations.**

Defendant's contention that Plaintiff's CIPA claims based upon her May 2024 visit to the Website are barred by a statute of limitations in section 340 of the California Code of Civil Procedure, (Def.'s Mem. at 11:17-25), is wrong. As an initial matter, Defendant fails to cite any case authority applying section 340 to Plaintiff's CIPA claims. Thus, Defendant has failed to satisfy its burden on this affirmative defense.

The applicable statute of limitations for California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, claims and tortious invasion of privacy claims is two years based upon section 335.1 of the Code of Civil Procedure. *See, e.g.*, *Hart v. TWC Product and Technology, LLC*, 526 F. Supp. 3d 592, 598-99 (N.D. Cal. 2021) (citing cases); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 WL 12114762, at *10 (C.D. Cal. Oct. 8, 2013) (Morrow, J.). As noted in *Hart*, "Courts that have applied a one-year statute of limitations appear not to have considered the statutory change." *Id.* at 599.

**C. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code.**

**1. Numerous Federal District Courts Have Recognized that Similar Third-Party Spyware Is Either a "Pen Register" or a "Trap and Trace Device".**

In recent years, there are currently at least ***thirteen*** different federal district court decisions that have comprehensively explained that third-party tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device

under § 638.51 of the Penal Code. *See, e.g.*, *Haleon*, 2025 WL 2494368, at *4-*8, *11-*12; *In re Meta Pixel Tax Filing Cases*, - F. Supp. 3d -, 2025 WL 2243615, at *2-*6 (N.D. Cal. Aug. 6, 2025); *Riganian v. Liveramp Holdings, Inc.*, - F. Supp. 3d -, 2025 WL 2021802, at *11-*12 (N.D. Cal. July 18, 2025); *Motorola*, 2025 WL 1939957, at *11-*12; *Heiting v. FKA Distributing Co. LLC*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6-*7 (C.D. Cal. Apr. 3, 2025); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-*7 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929-30 (C.D. Cal. 2025); *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3-*5 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024); *Moody v. C2 Educ. Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

**2. The Website's Spyware Qualifies as a "Device or Process" Because It Constitutes "Software that Identifies Consumers, Gathers Data, and Correlates that Data."**

In *Greenley*, *supra*, the federal court explained, "Today, pen registers take the form of software." 684 F. Supp. 3d at 1050. *Greenley* added:

> "[T]he Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***…***Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'***"

*Id.* (emphasis added). Four other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data. *Lesh*, 2025 WL 563358, at *3 (quoting *Greenley*); *Zarif*, 2025 WL 486317, at *12 (quoting *Greenley*); *Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley* and *Shah*); *Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley*).

That is precisely what the FAC in the instant action alleges. (FAC ¶¶ 34-66.) The FAC's allegations allege that third party spyware on the Website engages in unique "fingerprinting" to de-anonymize visitors to the Website. (FAC ¶ 57.) Thus, the FAC alleges that users are tracked while visiting the Website, which can include when a user views the page, page interactions, and, of course, the identification of Website visitors.

The Court can and should also infer from the FAC's allegations about the installation of tracking code on Plaintiff's Internet browser that the FAC's allegations allege that the Website's spyware can geolocate[7] users of the Website who are from California as reflected by such users' IP addresses. (FAC ¶¶ 29, 32.) For example, the FAC expressly identifies five particular third-party software developers whose software is embedded onto the Website. (FAC ¶¶ 39-66.) What can be gleaned from the FAC is that such specific spyware gathers visitor information about their devices including the IP address to determine other information such as geolocation data in order to segment users for targeted advertising. Thus, the FAC alleges substantial "downstream consequences" arising from Defendant's capturing of the IP address of Plaintiff's computerized device while visiting the Website. *TransUnion*, 594 U.S. at 442.

Thus, the Website's spyware alleged in the FAC qualifies as "device or process" within the meaning of subdivision (c) of section 638.50 of the Penal Code because it constitutes "software that identifies consumers, gathers, data, and correlates that data." *Greenley*, 684 F. Supp. 3d at 1050.

In addition, the Website's software is a "device" because "in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *James v. Walt Disney Co.*,

[7] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act). *Greenley* involved, *inter alia*, the collection of geolocation data by website data collectors. 684 F. Supp. 3d at 1037.

701 F. Supp. 3d 942, 958 (N.D. Cal. 2023).

**3. The IP Addresses Collected by the Website's Spyware Qualify as "Addressing Information."**

In *Mirmalek*, *supra*, the federal court stated: "As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.''" *Mirmalek*, 2024 WL 5102709, at *4 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007)); *see also Shah*, 754 F. Supp. 3d at 929 (holding that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Privacy Litig.*, 750 F.3d at 1108); *see also Lesh*, 2025 WL 563358, at *4 ("the IP addresses collected by the Trackers qualify as 'addressing information' under the statute [Penal Code § 638.50]"). In *Lesh*, the federal court noted, "An IP address contains information related to geographical location of a device's state, city, and zip code." *Id.*

**4. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted."**

As *Lesh* recognized, "IP addresses are 'transmitted by an instrument or facility from which a wire or electronic communication is transmitted.'" *Lesh*, 2025 WL 563358, at *4 (quoting Penal Code § 638.50); *see also Shah*, 754 F. Supp. 3d at 928-29. Notably, *Lesh* rejected construing section 638.50 as narrowly limited to only the capture of telephone information. *Lesh*, 2025 WL 563358, at *4; *Shah*, 754 F. Supp. 3d at 930 ("Section 638.52, however, merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line.").[8] *Lesh* concluded, "In short, the plain text of

[8] The federal Pen Register Act and CIPA's pen register and trap and trace device provisions are so similar because the Pen Register Act sets a "floor," *i.e.*, a minimum standard that states can exceed with more stricter privacy laws, but they cannot enact "less restrictive legislation" as confirmed by the Wiretap Act's legislative history. Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) (citing S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)). Thus, because the Patriot Act amended the "pen register" and "trap and trace device" definitions to cover software processes that collect information,

Continued on the next page

Section 638.50 clearly does not limit the application of pen registers to telephones." *Lesh*, 2025 WL 563358, at *5. *Lesh* is persuasive. *See also Riganian*, 2025 WL 2021802, at *11 ("if the drafters of Section 638.50 intended for 'pen register' to be limited to telephone technologies, they knew how to say so") and *Motorola*, 2025 WL 1939957, at *11 (same).

**5. The Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong.**

Defendant argues that Plaintiff's claim predicated upon a violation of section 638.51 of the Penal Code cannot state a viable cause of action because: (1) the statutory definition of both "pen register" and "trap and trace device" exclude the "contents of a communication," in section 638.50(b) & (c) of the Penal Code; and (2) the FAC implies that such contents of a communication were recorded. Such precise argument has been expressly rejected by at least two federal district courts recently. *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, at *4-*6; *Haleon*, 2025 WL 2494368, at *12. Such decisions are persuasive.

**D. Plaintiff's Other Claims Are Plausibly Alleged.**

Plaintiff's statutory standing analysis set forth above substantially overlaps with Defendant's arguments seeking the dismissal of the remainder of the claims pled in the FAC with limited exceptions addressed below.

First, Defendant's contention that the claims based on the violations of the Wiretap Act and section 631(a) must be dismissed because a person's browsing history is record information, (Def.'s Mem. at 8:3-9:18), and not the contents of a communication is wrong. *Haleon*, 2025 WL 2494368, at *11 ("descriptive URLs … constitute 'contents'"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023). Plaintiff's browsing history is information that is "not like the 'outside of an envelope,' revealing the address

---

California could not enact "less restrictive legislation" on this same topic and avoid being preempted by the federal provisions.

and name of the recipient, but instead the contents of a letter." *Id.* at 936 (quoting *In re Zynga Privacy Litig.*, 750 F.3d at 1108 and citing *In re Facebook*, 956 F.3d at 605 (holding that "full-string detailed URL[s]" are distinct from information discussed in *In re Zynga Privacy Litig.*) (noting that "resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites").

Second, Defendant's assumption that the fourth clause of section 631(a) imposes an "abetting" legal standard, (Def.'s Mem. at 13:2-5), is wrong because the fourth clause of section 631(a) omits the word "abet". *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023).

Third, the Court should rely upon the persuasive reasoning of *Haleon*, *supra*, explaining why similar claims alleging intrusion upon seclusion, invasion of privacy, violation of section 631(a), fraud, and unjust enrichment were not subject to dismissal. 2025 WL 2494368, at *8-*15.

**E. Defendant's Forum Selection Clause Argument Is Without Merit.**

Defendant's "alternative" request to transfer this action based on a forum selection clause within its Legal Terms of Use Updated August 29, 2024 ("TOU"), (Def.'s Mem. at 3:17), is without merit.

First, Defendant's argument that Plaintiff is bound by its TOU merely because Plaintiff is relying on Defendant's admissions against interest contained within its Privacy Policy conflates the separate and distinct question of whether Plaintiff is bound by such Privacy Policy or TOU.

Second, there is no admissible evidence that Defendant provided either actual or inquiry notice of its TOU containing such forum selection clause quoted in the instant Motion to Plaintiff during her visits to the Website.

"In determining whether a valid … agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.' " *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citations omitted).

"[A] webpage must take steps 'to ***capture the user's attention*** and secure [his or] her assent [to the terms at issue].'" *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (emphasis added) (quoting *Nguyen*, 763 F.3d at 1178 n.1).

"''To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.''" *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (citation omitted). "For a hyperlink to be reasonably conspicuous, it must be denoted by design elements tailored to notify the reasonably prudent internet user of its presence." *Id.* at 1156. "The '***context of the transaction***,' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design,' inform" that analysis. *Id.* at 1155 (emphasis added) (quotation omitted). "The nature of the service or goods offered and the visual aspects of every page of a multi-page transaction should be ***considered together***." *Chabolla*, 129 F.4th at 1155 (emphasis added).

The Ninth Circuit requires applying an "objective, totality-of-the-circumstances standard" in evaluating the visual prominence of the advisals on a website under California law. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023); *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 460 (2021), *rev. denied*, No. S273056 (Apr. 13, 2022) ("'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'") (citation omitted). "What the courts are … conducting when considering these criteria … is a fact-intensive inquiry." *Sellers*, 73 Cal. App. 5th at 473.

Plaintiff's Declaration confirms that Plaintiff did not receive actual notice of any forum selection clause in the TOU cited by Defendant, and made no purchase. (Rodriguez Decl. ¶¶ 2-3.) Defendant makes no attempt to provide any competent evidence that Plaintiff received actual notice of such TOU. "[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the . . . agreement

turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177.

As for the issue of inquiry notice, Defendant is relying upon a browsewrap type of fact pattern, which is unenforceable against Plaintiff. "Most courts now have identified at least four types of internet contract formation, most easily defined by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Sellers*, 73 Cal. App. 5th at 463. "'A '*browsewrap*' agreement is one in which an internet user accepts a website's terms of use merely by browsing the site. A '*clickwrap*' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available. A '*scrollwrap*' agreement is like a 'clickwrap,' but the user is presented with the entire agreement and must physically scroll to the bottom of it to find the 'I agree' or 'I accept' button…. '*Sign-in-wrap*' agreements are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service. While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up.'" *Id.* at 463-64 (citation omitted and emphasis in original). Generally, "browsewrap [agreements] provid[e] the least" amount of notice whereas "scrollwrap [agreements] provid[e] the most." *B.D. v. Blizzard Enter., Inc.*, 76 Cal. App. 5th 931, 946 (2022).

Here, it is undisputed that Defendant's Website did not present its Website users with its TOU via any type of a pop-up banner that a Website visitor would encounter upon visiting the Website. (FAC ¶¶ 1, 67-68; Ferrell Decl. ¶ 3 & Ex. 1.) The Website's cookie banner only set forth a hyperlink to its Privacy Policy only. *Id.* No hyperlink to the Website's TOU is visible on such banner. *Id.*

Defendant is relying upon a browsewrap type of electronic agreement because there are no advisals at all for a visitor to review the Website's TOU. (Ferrell Decl. Ex. 1.) The Ninth Circuit has held that a browsewrap agreement is not enforceable despite the

existence of a conspicuous hyperlink alone. *Nguyen*, 763 F.3d at 1178-79. In *Nguyen*, the Ninth Circuit held:

> "In light of the lack of controlling authority on point, and in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, ***we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice***."

*Id.* at 1178-79 (emphasis added). This Court is bound by *Nguyen*. *See also Sellers*, 73 Cal. App. 5th at 470 ("[A] browsewrap agreement . . . in which the website provider assumes assent is given by mere use of the website, based exclusively on the existence of a hyperlink that takes the consumer to the applicable set of contract terms—is not sufficient to bind the consumer.").

Although Defendant cites paragraphs 15 and 29 of the FAC, (Def.'s Mem. at 20:3-7), those paragraphs refer to the Website's Privacy Policy as opposed to its TOU.[9] Indeed, the hyperlink cited in the FAC is of the URL address at: https://www.knotts.com/legal/privacy-policy. (FAC ¶¶ 15, 29.) The FAC also cites the hyperlink at: https://www.knotts.com/ccpa, which sets forth Defendant's California Consumer Privacy Act Notice. (FAC ¶¶ 30, 32, 33.) Needless to say, those are not the same as the purported hyperlink cited in the instant Motion, which is: https://www.knotts.com/legal. (Def.'s Mem. at 20:22-23.) Notably, even as of October 9, 2025, the hyperlink named "Privacy Policy" on the Website's cookie banner takes the user to the landing page displaying ***only*** the Privacy Policy itself and not to the "Legal Terms of Use". (Ferrell Decl. ¶ 3.) This is presumably why Defendant completely ignores

---

[9] There is no evidence that the Website's Privacy Policy contains any forum selection clause.

addressing its cookie consent banner as relevant to the issue of inquiry notice in the instant Motion. Defendant knows that it provides no inquiry notice with respect to its TOU.

Dated: October 10, 2025

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*

Scott. J. Ferrell
Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 10, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell